CHARLES F. GILMAN ET AL.

*vs.*

MARY A. PORTER ET AL.

———

VESTRY OF GRACE AND ST. PETER'S CHURCH,
A CORPORATION, ET AL.

*vs.*

MARY A. PORTER ET AL.

———

THE CONTINENTAL TRUST COMPANY, TRUSTEE,
ET AL.

*vs.*

MARY A. PORTER ET AL.

*Wills: construction.   Vesting of estates: persons in esse.   In-
tendments against intestacy.*

Any devise or bequest in favor of a person or persons *in esse,*
whether such persons be individualized or treated as a class,
confers an estate that vests immediately, even though the time
of possession or enjoyment be postponed, unless there be some
clearly expressed desire, or some manifest reason, for suspend-
ing or deferring the time of vesting.                    p. 641

Every intendment is to be made against holding a man to have died intestate, who sat down to dispose of the residue of his property.                                                    p. 641

A provision in a will left the remainder of the estate "in trust, at the decease of my wife and daughter, to pay over and deliver to any child or children of my said daughter * * *, and if more than one, then in equal portions, his, her, or their heirs, executors and administrators, forever, to have and to hold the whole of the estate, thereby terminating and forever extinguishing this trust." The testator died, leaving a widow and daughter; the latter had one child only, a daughter. The widow died in 1884, the granddaughter in 1896, unmarried and intestate, and the latter's mother in 1913. Upon a bill to construe the will, it was: *Held,* that upon the birth of the granddaughter, the remainder, under the testator's will, then ceased to be a contingent remainder, and became vested in right in her, subject to let in any after-born children of her mother.
                                                                p. 642

*Decided October 5th, 1915.*

Three appeals in one record from the Circuit Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The causes were argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Richard S. Culbreth* and *John L. G. Lee,* for Charles F. Gilman, *et al.,* appellants.

*H. Ralph Cover* (with whom was Edward Duffy on the brief), for the Continental Trust Co., Trustee, for H. Lennox Bond, Adm., and for Edward P. Hill, Adm. *c. t. a.* appellants.

*W. Hall Harris* filed brief for Sidney Blanchard, appellant.

*Wilton Snowden, Jr.* (with whom was *George R. Gaither* on the brief), for the Vestry of Grace and St. Peter's Church. appellant.

*Leigh Bonsal,* for Mary A. Porter and others, appellees.

BRISCOE, J., delivered the opinion of the Court.

There are three appeals, in the record now before us, but as they are taken from the same decree, they will be considered as one appeal.

The bill was filed on the 8th of April, 1914, by the substituted trustee, under the last will and testament of Charles Gilman, late of Baltimore City, deceased, to obtain a construction of certain clauses of his will dated the 22nd day of July, 1856, and probated in the Orphans' Court of Baltimore City, on the 14th of September, 1861.

The clauses of the will in controversy and material to this inquiry are as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed, which I may own at the time of my decease I give, bequeath and devise to my executor above named in trust to and for the following uses, viz:

"Second: In trust to collect and receive the interest, dividends and other income of the residue thereof, and as the same shall come to his hands, the one moiety or half part of such income to pay over to my said wife, to her sole and separate use, for the period of her natural life; and the other moiety or half part thereof to pay over to my said daughter, to her sole and separate use, independent of any husband she may have and in no way subject to his control or liable for his debts or other pecuniary responsibilities, for and during the period of her natural life; and upon the occurrence of the death of either, then it is my will,

and I so hereby direct, that the whole income be paid
over to the survivor to her sole use as aforesaid, for
the period of her natural life.  Provided, that in the
event of the death of my said daughter during the
lifetime of my said wife, and of her leaving a child or
children of her body begotten, then it is my will and
I hereby direct that the one moiety or half part of said
income be paid over for their support during the nat-
ural life of my said wife.

"Fourth: In trust, at the decease of my said wife
and daughter, to pay over and deliver to any child or
children of my said daughter of her body begotten,
and if more than one, then in equal portions, his, her
or their heirs, executors and administrators, forever
to have and to hold the whole of said estate, thereby
terminating and forever extinguishing this trust."

The testator died in 1861, leaving a wife, Catherine
Blanchard Gilman, and one daughter, Ellen Gilman, who
at the date of his death, was about 28 years of age, and in
1870 married one William H. Porter.  Mr. Porter died in
1873, leaving a widow, and one daughter Nellie G. Porter,
who died in 1896 unmarried and intestate.  The testator's
wife, Mrs. Gilman died in 1884, and his daughter Ellen
Gilman Porter died in 1913, without leaving a child or
descendants, but left a will, by which she devised and be-
queathed all the rest and residue of her estate real and per-
sonalty to the Continental Trust Company of Baltimore in
trust, for certain purposes named therein.

The property left by the testator consists of real and per-
sonalty, in the nature of ground rents, bonds and stocks and
the income from the trust estate under the will was paid
over to Mrs. Ellen Gilman Porter, the testator's daughter,
until her death, on the 6th of October, 1913.

There are three different theories or interpretations of the
will presented and stated by the parties to the record:

First—That the granddaughter of the testator, Nellie Gil-
man Porter, at the time of her death in 1896, took a vested

estate in remainder in the estate of the testator and that this vested estate passed at her death to her mother one of the life tenants under the will.

Second—That there was no grandchild of the testator *in esse,* at the date of the termination of the life estates and the testator died intestate as to the remainder and it passes to his heirs and next of kin; and,

Third—That the testator intended that the remainder should pass as to personalty to the representatives and as to realty, to the heirs, of the granddaughter Nellie G. Porter, who were such at the date of the death of Ellen Gilman Porter, her mother and one of the life tenants under the testator's will.

The Court below held, and decreed that under the terms of the will, in dispute, the testator intended that the residue of his estate should vest in his grandchildren, their heirs and personal representatives, only upon and after the death of the widow and daughter, and not before; and that as Nellie G. Porter was the only grandchild of the testator, the property of the testator after the death of his widow and daughter vested in Nellie G. Porter, her heirs and personal representatives, as of the date of the termination of the life estate of the testator's wife and daughter. And it is from this decree, that the appeal in this case has been taken.

The controlling question, then, is when did the remainder vest, and to whom did it decsend and to be distributed, upon the death of the life tenants.

The language of the will in this respect, is clear and obvious, and is as follows: "At the decease of my said wife and daughter to pay over and deliver to any child or children of my said daughter of her body begotten, and if more than one, then in equal portions, his, her and their heirs, executors and administrators, forever, to have and to hold the whole of said estate; thereby terminating and forever extinguishing this trust."

. The main facts are undisputed that the testator had one daughter, Ellen Gilman, who at the date of his death in 1861,

was about 28 years of age. She married in 1870, one William H. Porter, who died in 1873, leaving a widow and one child, Nellie G. Porter, who died in 1896, unmarried and intestate. The widow of the testator, Mrs. Gilman, died in 1884, and the other life tenant, his daughter Ellen Gilman Porter died in 1913.

Under this state of facts, we think, it is manifest, that the estate of the testator which was limited under his will, to "the child or children of his daughter," vested in right in the granddaughter, Nellie G. Porter, upon her birth, to be enjoyed by her upon the termination of the life estate, devised to his widow and daughter, and as Nellie G. Porter died intestate and without issue prior to the termination of the life estate, the estate in remainder both personal and real passed and descended, to the heirs and personal representatives of the granddaughter of the testator, Nellie G. Porter.

In *Dulany* v. *Middleton,* 72 Md. 67, this Court said: "It is very clear, from all the provisions of the will, that the testator intended to dispose of his entire estate, and that he did not contemplate the possibility of a state of intestacy as to any part of his estate, with respect to any event or for any interval of time. Besides this, the law favors the vesting of estate at the earliest moment that is consistent with the apparent intent of the testator, or the general scheme of his will. The general principle is, that any devise or bequest in favor of a person or persons *in esse,* whether such persons be individualised or treated as a class, unless there be some clearly expressed desire or some manifest reason for suspending or deferring the time of vesting, confers an immediately vested interest, though the time of possession or enjoyment may be postponed. This principle is especially enforced in regard to residuary bequests, since intestacy is generally the consequence of holding them to be contingent. As said by Lord Alvanley, M. R., in *Booth* v. *Booth,* 4 Ves. 407: "Every intendment is to be made against holding a man to die intestate, who sits down to dispose of the residue of his property."

And to the same effect, are the cases of *Tayloe* v. *Mosher,* 29 Md. 443; *Roberts* v. *Roberts,* 102 Md. 131; *Lewis* v. *Payne,* 113 Md. 127; *Poultney* v. *Tiffany,* 112 Md. 632; *Washburn Real Property,* Vol. 2, sec. 1651; *Kent's Commentaries,* Vol. 4, 206; *Venable's Real Property,* pp. 76, 77 and 78.

Under the well settled rule established by the cases and authorities cited herein, it is clear that upon the birth of Nellie G. Porter, the grandaughter, the remainder under the testator's will, then ceased to be a contingent remainder and became vested in right in her, and subject to let in after born children of her mother, Ellen Gilman Porter.

The remainderman was then in esse and ascertained, and as it vested in right, nothing but her death before her mother, the life tenant, prevented it from vesting in her, in possession and in enjoyment.

For these reasons, we reversed the decree of the Court below, on the 24th day of June, 1915, in these cases, by a *per curiam* opinion and remanded the cause. The costs in this Court and the Court below by agreement of counsel filed in the cases, will be paid out of the trust estate.

> *Decree reversed and cause remanded, the costs to be paid out of the trust estate.*

BURKE, J., dissents.