JOHN H. POCOCK, Executor, et al. *v.* J. MERRY-MAN GLADDEN.

J. MERRYMAN GLADDEN *v.* JOHN H. POCOCK, Executor, et al.

[Nos. 71, 72, October Term, 1927.]

*Decided January 13th, 1928.*

250

The cause was argued before BOND, C. J., URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Philip H. Close*, with whom was *S. A. Williams* on the brief, for John H. Pocock and others, defendants below.

*Edwin H. W. Harlan* and *John S. Young*, for J. Merryman Gladden, plaintiff below.

DIGGES, J., delivered the opinion of the Court.

Mrs. Mary E. Gladden died in Harford County, Maryland, on the 25th of December, 1924, leaving a last will and testament dated the 21st of June, 1913. The testatrix made two codicils to her will, the first dated in 1916 and the second in 1921. This will and the codicils thereto were duly executed so as to pass real and personal property. John H. Pocock, the grandson of the testatrix, was substituted for J. Merryman Gladden, her son, as executor of the will by the first codicil. The will and codicils were duly admitted to probate by the Orphans' Court of Harford County, and the executor entered upon the duties of his office; he has passed a first and final administration account in said court, whereby it appears that he has paid all the debts of the testatrix, and showing a balance distributable of $9,474.63.

At the time of the making of the will the testatrix had a husband, John H. Gladden, living, and three sons and one daughter, J. Merryman Gladden, J. Edgar Gladden, Leon B. Gladden, and Mary P. Pocock. All of these were living at the time of the execution of the first codicil, but at the time of the execution of the second codicil her son Leon B. Gladden had died unmarried and without issue. At the time of the testatrix' death her husband and all of her children with

the exception of Leon B. Gladden were living. The husband died on March 5th, 1925. The final administration account was passed on the 29th of April, 1926, and on September 30th, 1926, J. Merryman Gladden filed a bill of complaint in the Circuit Court for Harford County, which, after stating the facts as above set forth, alleges certain constructions of the terms of said will and codicils to be the correct ones, filing the will and codicils as exhibits, and praying that the court take jurisdiction in the premises and construe the said will of Mary E. Gladden, deceased, and the codicils thereto. In said bill John H. Pocock, the executor, J. Edgar Gladden, and Mary P. Pocock are made defendants. The defendants answered, admitting the allegations of the bill, but denying the correctness of the construction of the last will and testament of Mary E. Gladden as claimed by the complainant. The case having been heard on the bill, exhibits, and answer, the court below, on April 4th, 1927, filed an opinion and the following decree:

"For the reasons stated, it is this 2d day of April, 1927, by the Circuit Court for Harford County, adjudged, ordered and decreed (1) that J. Merryman Gladden is entitled to one-fourth of the net proceeds of the personal property of which Mary E. Gladden died possessed, absolutely; (2) that said J. Merryman Gladden is entitled to one-fourth of the net proceeds of the real estate of which the said testatrix died seised absolutely upon the payment of $800 to the representatives of Leon B. Gladden; (3) that J. Merryman Gladden is entitled to the use and possession of the $1,000 in bonds referred to in the second codicil of the will of Mary E. Gladden during, and only during, his lifetime, and should he die without descendants said bonds are to be distributed equally to J. Edgar Gladden and Mary P. Pocock, or to their respective representatives; (4) that J. Edgar Gladden and Mary P. Pocock each is entitled to three-eighths of the real and personal property of which Mary E. Gladden died seised and possessed, less the $1,000 in bonds referred to in the second codicil of the will of said testatrix; and (5) that the costs of this proceeding be paid from the fund in the

hands of John H. Pocock, executor of the will of the said Mary E. Gladden for distribution." From this decree the two appeals contained in this record were taken.

The provisions of the will and the two codicils involved in this proceeding are as follows:

"I give, devise and bequeath to my husband, John J. Gladden, for and during his life, all the rest and residue of my personal property and all the real estate to which I may in any manner be entitled at the time of my death.

"After the death of my said husband, I give, devise and bequeath all the personal property and real estate given, devised and bequeathed to him as aforesaid, as follows:

"I give and bequeath the personal property to my son, J. Edgar Gladden, if he is living with my said husband, at the time of his, my said husband's death, but if he is not so living I give and bequeath the same to the said J. Edgar Gladden and three other children, namely, J. Merryman Gladden, Mary P. Pocock, and Leon B. Gladden, but, if my said son, Leon, shall die without leaving descendants, I give and bequeath the property given and bequeathed to him as aforesaid, to my said children, Mary P. Pocock and J. Edgar Gladden.

"I give and devise the real estate to my said four children, namely, J. Merryman Gladden, Mary P. Pocock, J. Edgar Gladden and Leon B. Gladden, but, if my said son, Leon, shall die without leaving descendants I give and devise the real estate so given and devised to him as aforesaid, to my said children Mary P. Pocock and J. Edgar Gladden.

"In case of the death of the said Mary P. Pocock, J. Merryman Gladden or J. Edgar Gladden, without leaving descendants, then I give, devise and bequeath the real and personal estate so given, devised and bequeathed to them, as aforesaid, and what they may be entitled to receive under any provision of this my last will and testament, to my surviving children and the descendants of any deceased child, the descendants of

any deceased child to be entitled to receive only such part thereof as said deceased child would have been entitled to, if alive."

First codicil:

"After the death of my husband, John J. Gladden, to whom I devised by said will, all the real estate to which I may be entitled at the time of my death for and during his life, I do hereby authorize and direct my said executor, John H. Pocock, to sell and convey said real estate and divide the proceeds of sale among those to whom I devised said real estate by my said will, hereby giving and bequeathing said proceeds to them in the same way as said real estate was devised to them, **except that in the division** of said proceeds my son, **J. Merryman Gladden, is** only to receive the one-fourth part thereof less the sum of eight hundred dollars, which sum is to be paid to my son, Leon B. Gladden, in addition to one-fourth part of the whole of said proceeds."

Second codicil:

"One thousand dollars which I hold in United States bonds, I will to my son, J. Merryman Gladden, his lifetime. If he dies without heirs, I will it back to J. Edgar Gladden and Mary P. Pocock equally."

J. Merryman Gladden contends that the appeal by the defendants below was not within the time prescribed by law, and should be dismissed. The decree was signed by the judge on April 2nd, 1927, but was not filed in the clerk's office until April 4th, 1927. The order for the appeal was filed June 3rd, 1927. If the time is reckoned from April 2nd, the appeal was taken too late, but, if it is to be reckoned from April 4th, it is within the time allowed. This contention is not seriously pressed; but in order that the question may be set at rest for the future, it is our opinion that the date of a decree, in contemplation of section 36 of article 5 of the Code, relating to the time within which appeals from decrees

or orders of courts of equity shall be taken, is that date upon which the decree becomes effective and binding, which can only be that date upon which it is filed and becomes a part of the public record of the case. It requires no authority to support this conclusion, as otherwise a court could sign a decree, and by inadvertence retain it in his possession until after the time allowed for appeal therefrom had passed. There is nothing binding in the decree of the court until it is filed, for the simple reason that until it is filed the court could alter or destroy it entirely and substitute some other in its place.

By the will the testatrix disposed of personal and real property, different dispositions being made of each of these species of property. In disposing of her personal property, she first bequeathes to a granddaughter, Frances Elizabeth Pocock, all of her silver and chinaware, mahogany table, and oil painting in the parlor of her residence. She then devised and bequeathed to her husband all the rest and residue of her property, both personal and real, for and during his life. After the death of her husband, which, as stated, occurred shortly after that of the testatrix, she bequeathed all of the personal property and real estate given, devised and bequeathed to him, as follows: "I give and bequeath the personal property to my son, J. Edgar Gladden, if he is living with my said husband, at the time of his, my said husband's death, but if he is not so living I give and bequeath the same to the said J. Edgar Gladden and my three other children, namely, J. Merryman Gladden, Mary P. Pocock, and Leon B. Gladden, but, if my son, Leon, shall die without leaving descendants, I give and bequeath the property given and bequeathed to him as aforesaid, to my said children, Mary P. Pocock and J. Edgar Gladden."

The record is silent as to whether or not J. Edgar Gladden was living with his father, the husband of the testatrix, at the time of the husband's death, but we assume that he was not so living, as the opinion of the lower court and the briefs of counsel treat that as being a fact. Therefore we will deal with the personal property upon the assumption

that J. Edgar Gladden was not living with his father at the time of his father's death, and that the personal property must go in the manner provided by the testatrix in such event. At the time of the testatrix' death her son Leon was dead and did not leave descendants, and, by the plain terms of this paragraph of the will in such event, that is to say, the event of Leon dying without leaving descendants, the one-fourth part of the personal property which was bequeathed to him was directed to go to the testatrix' children, Mary P. Pocock and J. Edgar Gladden. We, therefore, conclude that the personal property, exclusive of the $1,000 Liberty bonds mentioned in the second codicil of the will, and exclusive of the proceeds from the sale of the real estate, should be divided as follows: One-fourth thereof to J. Merryman Gladden, three-eighths to Mary P. Pocock and three-eighths to J. Edgar Gladden.

In dealing with the real estate, in the body of the will the testatrix gave and devised the same to her four children, namely, J. Merryman Gladden, Mary P. Pocock, J. Edgar Gladden and Leon B. Gladden, but if her son Leon should die without leaving descendants, she gave and devised the real estate, so given and devised to him as aforesaid, to her said children, Mary P. Pocock and J. Edgar Gladden; and further provided that in case of the death of either Mary P. Pocock, J. Merryman Gladden, or J. Edgar Gladden, without leaving descendants, "then I give, devise and bequeath the real and personal estate so given, devised and bequeathed to them, as aforesaid, and what they may be entitled to receive under any provision of this my last will and testament, to my surviving children and the descendants of any deceased child to be entitled to receive only such part thereof as said deceased child would have been entitled to, if alive."

The provisions of this clause of the will need not be considered, because its provisions dealt with and were intended to cover a situation which might arise before the vesting of the remainder in her children, Mary P. Pocock, J. Merryman Gladden, and J. Edgar Gladden. The will created a life estate in the testatrix' husband, with remainders in her chil-

dren, subject to be defeated upon the contingency, as to each one, of him or her dying without leaving descendants. The further disposition of the estate, upon the contingencies named, could only be effective in the event the contingency of dying without leaving descendants should happen either during the life of the testatrix, or, at longest, during the life of the life tenant. If the contingency did not happen within such periods, that is to say, if any one of the children did not die during the lifetime of the testatrix or the life tenant without leaving issue, his or her portion of the estate became vested and fixed in such child.

Where the question of the time of vesting of an estate is material, and where more than one date is furnished by the will at which the estate could possibly vest, an examination of the treatment of this subject by the authorities indicates a practical unanimity as to certain principles to be applied: First, that the law favors the early vesting of all estates, that is to say, the law favors that construction which makes every man's interest in property definite and fixed, for the reason that when it is not definitely determined, the property, so long as it thus remains, cannot be applied and used in the business activities of the country; second, that the testator has the undoubted right to fix the time of vesting of any estate created by him, within legal limitations; and third, that if the intention of the testator to have the estate vested at a particular time is apparent from the whole will, that construction will be adopted which gives effect to the intention of the testator, even though it violates the rule favoring the early vesting. *Larmour v. Rich,* 71 Md. 369; *Cox v. Handy,* 78 Md. 108; *Poultney v. Tiffany,* 112 Md. 630; *Booth v. Eberly,* 124 Md. 22; *In re Gilman Estate,* 126 Md. 641.

In the present case we are not called upon to decide whether the remainders created by the will vested at the death of the testator or at the death of the life tenant, because the situation in respect to the devisees and legatees is identical, whether it be viewed at one time or the other. The only change, after the date of the will and the first codicil which

deal with the property now being considered, and up to the present time, was the death of Leon B. Gladden, and his death occurred before the decease of both the testatrix and the life tenant. Considering the disposition of the real estate made by the will, irrespective of the codicil, J. Merryman Gladden would be entitled to one-fourth, and J. Edgar Gladden and Mary P. Pocock each to one-fourth plus one-half of Leon B. Gladden's one-fourth, giving them each three-eighths. What change in this disposition was accomplished by the provisions of the first codicil? The answer is that it changed the will definitely in three particulars: First, it substituted the grandson, John H. Pocock, executor of the will in place of the son, J. Merryman Gladden; second, it directed that after the death of the life tenant the executor should sell the real estate and divide the proceeds, whereas the will left the sale of the real estate discretionary with the executor; and third, it made a different disposition of the proceeds of the real estate than had been made by the will of the real estate itself, by increasing Leon B. Gladden's one-fourth interest by the sum of $800, and deducting this sum of $800 from J. Merryman Gladden's one-fourth part. The testatrix, after making this change in the proportions which each one of her children was to get, provided, "hereby giving and bequeathing said proceeds to them in the same way as said real estate was devised to them." The lower court determined that the $800 to be added to Leon's part and taken from J. Merryman's part of the proceeds of the real estate created a debt from J. Merryman Gladden to Leon B. Gladden, which debt was fixed as a lien upon J. Merryman Gladden's portion of the proceeds of the sale, and did not go to Mary P. Pocock and J. Edgar Gladden under the terms of the will, but was properly payable to the administrator of Leon B. Gladden, to be distributed among his personal representatives. The ultimate effect of such determination is to give J. Merryman Gladden one-third of this sum of $800 instead of dividing the whole equally between Mary P. Pocock and J. Edgar Gladden. We are unable to agree with

the lower court in his construction in that respect. We are of the opinion that the clearly manifest intention of the testatrix, as expressed in the first codicil, was to change the proportions which each of her children was to take in the real estate, or in the proceeds derived from the sale thereof, from those expressed in the body of the will; and that, in determining what disposition was to be made of the substituted proportions which each child was to get, we are to be governed by the provisions set forth in the body of the will. This seems clear when we consider that, while she changes the proportion, by the explicit and unambiguous language of the codicil the testatrix says that said proceeds, that is, the proceeds as apportioned by the codicil, should go to her children "in the same way as said real estate was devised to them."

Our conclusion therefore is, in respect to the proceeds of the real estate, that J. Merryman Gladden is entitled to one-fourth thereof less $800; that J. Edgar Gladden and Mary P. Pocock are together entitled to three-fourths of said proceeds, plus $800; that is to say, the portion which J. Merryman Gladden would have taken under the body of the will was diminished by $800, and the combined portions which J. Edgar Gladden and Mary P. Pocock would have taken under the body of the will were increased in the sum of $800 by the provisions of the first codicil.

The second codicil provides: "One thousand dollars which I hold in United States bonds, I will to my son, J. Merryman Gladden, his lifetime. If he dies without heirs, I will it back to J. Edgar Gladden and Mary P. Pocock equally." A literal interpretation of this codicil gives J. Merryman Gladden a life estate, and only a life estate, in these bonds, because the testatrix expressly limits his interest to his lifetime. What becomes of the remainder after the termination of his life estate? The codicil disposes of it by saying, "if he dies without heirs, I will it back to J. Edgar Gladden and Mary P. Pocock"; and a literal interpretation of the language, "if he dies without heirs," would mean an indefinite failure of heirs. Such an interpretation cannot be adopted,

because manifestly it was the intent of the testator that in event of the happening of the contingency which she had in mind, the bonds were to become the property of J. Edgar Gladden and Mary P. Pocock, who are certainly heirs of J. Merryman Gladden in the event he dies without descendants. The testatrix could not have meant that two designated persons, who would be the heirs of the life tenant in event he died without descendants, should take the property in remainder only in event that they themselves had predeceased the life-tenant. It is admitted that the second codicil was written by the husband of the testatrix, a man unlearned in the law, and who would not be supposed to be familiar with the technical meaning of the word "heirs." There can be little doubt that he used the word "heirs" here as synonymous with "issue" or "descendants," because to give it its technical sense would be to destroy what we have said was the intention of the testatrix. It would be a strained construction to interpret this codicil to mean that the testatrix intended that the contingency, upon which the remaindermen named in this codicil should take the remainder, was that J. Merryman Gladden should leave no heirs at all, and at the same time name two people who are and would be his heirs, as those who would take the estate in such an event. In other words, she could not have meant that if he died without heirs, the property should go to the two named persons who are his heirs. To give effect to the manifest intention of the testatrix, which is the cardinal rule in the interpretation of testamentary papers, the word "heirs," as used in the second codicil, must be construed to mean "descendants," and such is our conclusion. It follows that in our opinion J. Merryman Gladden is entitled to a life estate in the bonds described in the second codicil, and if he dies *without descendants,* Mary P. Pocock and J. Edgar Gladden are entitled to the remainder therein equally. If J. Merryman Gladden should die leaving descendants, what disposition should be made of the remainder? While this contingency may happen, it is improbable that it will, and we do not feel called upon to anticipate it. Therefore, we will not now decide what is the proper dis-

position of the remainder in the property covered by the second codicil in event J. Merryman Gladden dies leaving descendants, but will leave that for determination should that contingency happen.

From the foregoing it will be seen that our conclusions in respect to the whole, are: (1) That J. Merryman Gladden is entitled to one-fourth of the net proceeds of the personal property of which Mary E. Gladden died seised and possessed, absolutely; (2) that J. Merryman Gladden is entitled absolutely to one-fourth of the net proceeds of the real estate of which the testatrix died seised and possessed, less the sum of $800; (3) that J. Merryman Gladden is entitled to the use and possession of the $1,000 in bonds referred to in the second codicil, during, and only during, his lifetime, and should he die without descendants, said bonds are to be distributed equally to J. Edgar Gladden and Mary P. Pocock or their respective representatives, and (4) that J. Edgar Gladden and Mary P. Pocock each are entitled to three-eighths of the personal property and three-eighths of the proceeds of the real estate, plus $400. It follows that the decree appealed from must be affirmed in part and reversed in part.

*Decree affirmed in part and reversed in part, and case remanded that a decree may be passed in accordance with the views herein expressed; the costs in both courts to be paid out of the estate.*