PARKINGTON APARTMENTS, INC. *v.* JOEL M.
CORDISH
AND JULIE A. FRIEDMAN

[No. 78, September Term, 1982.]

*Decided June 1, 1983.*

The cause was argued and reargued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

Argued and reargued by *William N. White* for appellant.

Argued and reargued by *Thomas E. L. Klenk* for appellees.

Argued by *James L. Shea, Assistant Attorney General,* for *amicus curiae,* State of Maryland and by *James R. Crook, Jr., Chief City Solicitor,* for *amicus curiae,* Mayor and City Council of Baltimore.

SMITH, J., delivered the opinion of the Court.

In this landlord-tenant case we shall reverse the judgment of the Baltimore City Court (now the Circuit Court for Baltimore City) which dismissed an appeal from the District Court of Maryland as not from a final judgment.

## I

As its name would indicate, Parkington Apartments, Inc., owns an apartment house in Baltimore City. Joel M. Cordish and Julie A. Friedman were tenants. Upon the basis of non-payment of rent Parkington instituted a summary eject-ment action against these tenants in the District Court in Baltimore City. In due season the court passed a rent escrow order by the terms of which the tenants were required to pay the rent into court each month. The payments were made promptly with the exception of one month. After numerous postponements, the exact reason for which does not fully appear, the matter came on for hearing. By then all payments due had been made. The District Court judge held:

"All right, first of all for the period of time between September the 30th until February the 19th, the court makes the finding in this case that there was unreasonable delay on the part of the landlord in completing the repairs as he was required to do and the tenants therefore are entitled to an abatement of rent during that period. The court will abate to the tenants the amount of $900. In addition, the court will disburse to the tenants an additional $15 for the remaining arrearages on the utility bills and for reasons previously stated by counsel will also award to counsel $400 in attorneys' fees in light of the findings made by Judge Lamson in the criminal litigation, the balance of the funds will be disbursed to the landlord, the escrow case will be terminated as of today."

This order was filed on August 26, 1981. Parkington, feeling itself aggrieved, appealed on August 28 to the

Baltimore City Court. Counsel for the tenants moved to dismiss the appeal, asserting that it was a judgment nisi which was entered on August 26 pursuant to Maryland District Rule 564 a, that the order for appeal was entered on August 28, that no judgment absolute could be entered until September 1, that no order for appeal was entered within thirty days from September 1, and hence under Maryland Rule 1335 b 3 the cause should be dismissed.

The judge in the Baltimore City Court, relying upon *Merlands Club v. Messall,* 238 Md. 359, 208 A.2d 687 (1965), held, "The appeal was filed prior to entry of a final judgment and is, therefore, of no force and effect."

Parkington filed a petition for a writ of certiorari with us asserting that under applicable statutes and M.D.R. 1 it was obliged to enter its appeal within two days "from rendition of judgment," with no provision being made for judgments nisi and final judgment as allegedly required by the Maryland District Rules. We granted the petition to address the important public question here presented.

Parkington was proceeding here under Code of Public Local Laws (1980 ed. as to Baltimore City) Art. 4, § 9-7. The tenants relied upon the rent escrow law found in § 9-9 of the same article.[1]

---

1. The local laws in question are enactments of the General Assembly subsequent to the adoption of home rule in Baltimore City pursuant to Maryland Constitution Art. XI-A. That article restricts the right of the General Assembly to enact local legislation once home rule has been adopted. In fact, Judge W. Mitchell Digges said for the Court in *State v. Stewart,* 152 Md. 419, 422, 137 A. 39 (1927), that one of the purposes of the amendment was to leave the General Assembly "more time to consider and pass upon general legislation . . . ." *See also State's Atty v. City of Balto.,* 274 Md. 597, 603-07, 337 A.2d 92 (1975). The parties in this case have not challenged the constitutionality of this local legislation. By this opinion we are not to be understood as expressing any view as to the validity of these enactments. We observe, however, that there are public general laws containing almost identical provisions. See Maryland Code (1974, 1981 Repl. Vol.) §§ 8-211 and 8-401, Real Property Article.

## II

M.D.R. 564 a provides that at the conclusion of a trial "the court shall enter judgment *nisi.*" Then M.D.R. 564 b goes on to state that if a motion for a new trial is not made within the time prescribed by M.D.R. 567 a, "the clerk shall enter a judgment absolute as of course." M.D.R. 564 brought into the District Court the procedure found in circuit courts as set forth in Rule 564. To the best of our knowledge no similar procedure existed in those tribunals which preceded the District Court.

M.D.R. 1 b states in pertinent part:

"The practice and procedure in landlord-tenant and grantee actions shall be governed:

"(i) by the procedural provisions of all applicable general statutes, public local laws and municipal and county ordinances . . . ."

Code of Public Local Laws (1980 ed. as to Baltimore City) Art. 4, § 9-3 et seq. provides the procedure for landlords to recover possession of their property when rent is not paid. Trial is to be held on the fifth day after the filing of the complaint. Provision is made for adjournment "for a period not exceeding seven days," except that if the consent of all parties is obtained, the trial may be adjourned for a longer period of time. If at trial it appears to the court that the rent or any part of it is actually due and unpaid, the judge is to determine the amount of rent and enter a judgment in favor of the landlord for this amount and for possession of the premises. The court is mandated to order the tenant to "yield and render up possession of said premises unto said lessor" within two days after *trial.* Provision is made for an extension of time if "within said period of two days" there is presented a certificate of a practicing physician certifying that surrender of the premises would endanger the health or life of any occupant thereof. Such extension is to be "upon such terms and for such period or periods as [the judge] shall deem necessary and just . . . ." The Act further states that if

the tenant or someone for him shall, prior to the date fixed by the judge for the payment of the rent or prior to any order of restitution, "tender the rent found to be due and unpaid, together with the costs of said suit, the said complaint shall be entered satisfied and no further proceedings shall be had thereunder." If the interval between the filing of the landlord's complaint and the trial of the case is more than three days, "any order or judgment of said Court with respect to the payment of rent shall include all rent due and unpaid up to and including the day of trial; and the proceedings amended to set forth the basis of said judgment or order."

Section 9-6 provides for the warrant of restitution. By it the warrant is directed to a constable of the District Court commanding "said constable to cause said lessor to have again and repossess said premises by putting him in possession thereof, and for that purpose to remove from said premises, by force if necessary, all the furniture, implements, tools, goods, effects or other chattels of every description whatsoever belonging to said tenant, or to any person claiming or holding by or under said tenant."

The basis of this controversy comes from § 9-7 which affords the right to "[a]ny party aggrieved" to appeal "at any time within two days from the rendition of such judgment . . . ." Parkington contends that its appeal on August 28 after the court's order on August 26 was the last permissible day for such appeal because of the provisions of M.D.R. 1 b.

The statutory genesis of § 9-7 appears to be Ch. 327 of the Acts of 1890 (§ 639 of Art. 4 of the 1888 Code of Public Local Laws) which accorded a right of appeal to the tenant "from the judgment of the justice of the peace to the Baltimore city court, at any time within two days from the rendition of such judgment . . . ." (The provision by which the landlord as well as the tenant may appeal came into § 9-7 by enactment of Ch. 211 of the Acts of 1949.)

2 G. Liebmann, *District Court Law and Practice* § 771 (1976) notes differences in procedures between the statewide act embodied in Code (1974, 1981 Repl. Vol.) § 8-401, Real

Property Article, and that set forth in the Code of Public Local Laws of Baltimore City and the similar code of Baltimore County. He opines:

> "The procedures set out in the general law and the two local laws are similar; however, where they diverge, the local laws (to the extent not made the subject of repeal in the general law) control by reason of the provision of Article 1, Section 13 of the Code."

Code (1957) Art. 1, § 13 provides that where the public general law and a public local law "of any county, city, town or district are in conflict, the public local law shall prevail."

*Black's Law Dictionary* 1165 (5th ed. 1979) is instructive as to what the General Assembly may have contemplated when it used the term "rendition of judgment":

> "Rendition of a judgment is effected when trial court in open court declares the decision of the law upon the matters at issue, and it is distinguishable from 'entry of judgment,' which is a purely ministerial act by which the judgment is made of record and preserved. Ex parte Gnesoulis, Tex. Civ. App., 525 S.W.2d 205, 209. A judgment is rendered as of date on which trial judge declares in open court his decision on matters submitted to him for adjudication, and oral pronouncement by the court of its decision is sufficient for 'rendition of judgment'. Farr v. McKinzie, Tex. Civ. App., 477 S.W.2d 672, 676.
>
> "The rendition of judgment is the pronouncement of the court of its conclusions and decision upon the matter submitted to it for adjudication; a judgment may be rendered either orally in open court or by memorandum filed with the clerk. Travelers Express Co., Inc. v. Winters, Tex. Civ. App., 488 S.W.2d 890, 892. 'Rendition' of judgment is distinguishable from its 'entry' in the records. Rehm v. Fishman, Mo. App., 395 S.W.2d 251, 255. See **Entering judgment.**"

As a general proposition, in equity in Maryland an appeal lies not from comments by or the opinion of a court, but from the written decree. *See, e.g., Ballan v. Ballan,* 251 Md. 737, 743, 248 A.2d 871 (1969), and cases there cited. It is the date of the filing of the decree which governs, not the date it bears, *Eberly v. Eberly,* 253 Md. 132, 133-34, 251 A.2d 900 (1969), and *Pocock v. Gladden,* 154 Md. 249, 253-54, 140 A. 208 (1928). This is not an equity case, but here the General Assembly by statute and we by rule appear to have carved out an exception to the general rule relative to entry of judgment.

Given *Black's* definition, the provisions of M.D.R. 1 indicating that in landlord-tenant matters the practice is to be governed "by the procedural provisions of all applicable . . . public local laws," and the obviously expedited timetable provided in the statute including the fact that the court may order the tenant to yield up possession of the demised premises within two days after the *trial (not* within two days after judgment), we conclude that if this is an action for summary ejectment or repossession of the premises, then it is not necessary for any judgment nisi to be entered, but the final judgment is the decision of the judge on the issue of whether the landlord is entitled to recover possession of the premises. We point out in this regard that, as previously noted, it is only recently that the landlord has had a right of appeal. The two-day provision undoubtedly was placed in the act to prevent tenants from prolonging possession by the device of an appeal. Moreover, the right of appeal accorded the tenant would be meaningless if he could be set on the street two days after trial as the statute clearly provides but he has no right of appeal until the expiration of three days after trial when a judgment absolute is entered.

## III

We examine the rent escrow law since an argument has been made that the appeal was not from an action for summary ejectment but from the decision under the rent escrow law, it apparently being the division of the rent with which Parkington was dissatisfied.

By Ch. 459 of the Acts of 1968 the General Assembly enacted a rent escrow law for Baltimore City now embodied, with subsequent modifications, in Code of Public Local Laws (1980 ed. as to Baltimore City) Art. 4, § 9-9. A statewide provision was not long in coming. See Ch. 414 of the Acts of 1975. One of the announced purposes of the Baltimore City law, as set forth in § 9-9 (a) (2), is that "to assure that dwellings meet certain minimum requirements as established by this Act tenants must have the free, unencumbered right of complaint to their landlords, the courts and governmental agencies." Subsection (a) (4) goes on to provide that "[t]he sanctions are intended to protect the life, health and safety of tenants and are not to be used to have premises redecorated or to have minor code violations corrected. It is also not the intention that such sanctions be used by either landlords or tenants as a means of harassment." Section 9-9 (d) states:

"(d) The assertion by the tenant, whether made by complaint or answer, shall be conditioned upon the following:

"(1) Prior to the commencement of the action by the tenant or by the landlord, the landlord or his agent was notified in writing by Certified Mail (return receipt) of the condition or conditions described in subsection (b), above, or was notified of such condition or conditions by a violation or condemnation notice from an appropriate State or municipal agency, but that the landlord has refused, or having a reasonable opportunity to do so, has failed to remedy the same. For the purposes of this subsection, what period of time shall be deemed to be unreasonable delay is left to the discretion of the court except that there shall be a rebuttable presumption that a period in excess of thirty (30) days from receipt of the notification by the landlord is unreasonable; and

"(2) Payment by the tenant into court of the amount of rent called for under the lease at the time of any assertion of rent escrow, unless or until such amount is modified by subsequent order of the court under subsection (f) (4), below.

"(3) The tenant has not received more than five (5) summons containing copies of complaints filed by the landlord against the tenant for rent due and unpaid in the year immediately prior to the initiation of the action by the tenant or by the landlord. If the tenant has lived on the premises six months or less and has received three (3) summons with copies of complaints for rent due and unpaid, the tenant shall not be entitled to make an assertion against the landlord as described in subsection (b)."

Subsection (f) provides for the court to make findings of fact on the issues before it and to "make any order that the justice of the case may require," including termination of the lease or ordering the premises surrendered to the landlord, ordering all monies already accumulated in escrow disbursed to the landlord or to the tenant, and ordering that the escrow be continued until the complained-of condition or conditions are remedied. Subsection (f) (4) states that one of the orders that may be entered is one to the effect that the amount of rent, "whether paid into the escrow account or paid to the landlord, be abated as determined by the court in such an amount as may be equitable to represent the existence of the condition or conditions found by the court to exist." Subsection (f) (5) provides for ordering any amount of monies accumulated in escrow disbursed to the tenant where the landlord refuses to make repairs after a reasonable time or to the landlord or to a contractor chosen by the landlord in order to make repairs or to otherwise remedy the condition. The court is required in such case "to insure that monies thus disbursed will be in fact used for the purpose of making repairs or effecting a remedy." Subsection (f) (6) provides for referring any matter before the court to the proper State or municipal agency for investigation and

report. Provision is made in subsection (f) (7) for ordering the escrow funds disbursed to pay a mortgage on the property in order to stay a foreclosure.

We have here no independent escrow action brought by the tenants. The only action in the District Court was Parkington's suit for summary ejectment for non-payment of rent. Thus, the escrow action here could only have been under § 9-9 (c) (2) "[b]y the tenant as a defense in answer to an action of distress for rent or in any complaint proceeding brought by a landlord to recover rent or the possession of leased premises for nonpayment of rent . . . ."

## IV

The action here was one by the landlord to recover possession of the premises for nonpayment of rent. The rent escrow law did not convert the proceeding into an ordinary civil action in the District Court. The statute provides that an appeal in a summary ejectment proceeding must be taken within two days from "the rendition of such judgment," which means in the context of this case from the date of the judge's decision. It follows, therefore, that the judge below erred in dismissing Parkington's appeal.

*Judgment reversed; case remanded to the Circuit Court for Baltimore City for further proceedings consistent with this opinion; appellees to pay the costs.*