## BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY, MD. *v.* MILSTEAD and PICKERALL

[No. 315, September Term, 1969.]

*Decided June 9, 1970.*

478

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Albert J. Lochte, Assistant County Attorney*, with whom were *Lionell M. Lockhart, County Attorney*, and *Harry L. Durity, Deputy County Attorney*, on the brief, for appellant.

*Karl G. Feissner*, with whom were *William L. Kaplan, Thomas P. Smith, Fred R. Joseph* and *Andrew E. Greenwald* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

The appellees, Milstead and Pickerall, wear two hats. One, as paid career fireman in the Prince George's County Department of Fire Protection and the second as officers of volunteer fire companies in that county. They viewed with considerable umbrage Administrative Order No. 1, dated July 2, 1968, issued by the Director of Fire Protection (Director) which in effect prohibited the continuance of their dual capacity. The appellees persisted in maintaining their dual roles which resulted in their discharge from their county employment as firefighters. On January 7, 1969, they filed a bill for declaratory relief in the circuit court seeking to establish the invalidity of Administrative Order No. 1. The lower court found that the pertinent parts of Administrative Order No. 1 were invalid because they were not based on any reasonable standard. The county then took this appeal. It should be noted that, although the Merit Board for Prince George's County has upheld their dismissal, the appellees have been continued in their paid status pending determination by this Court of the validity of Administrative Order No. 1. We disagree with the lower court and are of the opinion that its order should be reversed.

The only question before this Court is whether Administrative Order No. 1 violated the basic constitutional standard of reasonableness. The appellees in their brief

point out that the court below did not question the validity of the ordinance delegating authority to the Director to promulgate rules and regulations relative to the activities of members of the Department in the performance of their duties but rather concerned itself with the reasonableness of the administrative order in question. As we have already stated we think the reasonableness of the order is the basic issue. We would rest the validity of the ordinance on the clear language of Article 17 of the Code of Public Local Laws of Maryland, as further codified in the Code of Public Laws of Prince George's County (1963 Ed., 1967 Supp.), which in pertinent part authorizes the Board of County Commissioners to:

"Enact any other ordinance for the safeguard of life, health and property and for the promotion of public safety, and moral welfare." § 18-1(b) (35).

Under Section 18-1(b) (38) the Board of County Commissoners may:

"Establish other departments or offices under the County Commissioners and prescribe the functions thereof; and, in addition whenever deemed necessary or desirable, discontinue, reorganize, consolidate, merge, or re-establish any existing or additional office, branch or department under the County Commissioners for more efficient or economical administration of governmental service."

The aforesaid Article 17, under Section 18-1(b) (37) also provides that the Board of County Commissioners may:

"Take over, consolidate, reorganize, merge or establish, with offices or departments under the County Commissioners, the functions, duties and responsibilities of any other governmental

agency, board, commission, upon passage of appropriate legislation *transferring function, duties* and responsibilities." (Emphasis supplied.)

Pursuant to this authority the County Commissioners enacted General Resolution No. 25-1968, which, in relevant parts, reads as follows:

"SECTION 1. *Establishment of Department of Fire Protection; Director, Consolidation of Services.*

"There is hereby established a Department of Fire Protection with a Director who shall be the chief executive officer thereof. All fire protection services directly provided by the County are hereby consolidated into, and placed under the direction of such department and its director.

"SECTION 2. *Director; Duties and Powers*

"The duties and powers of the Director of the Department of Fire Protection shall be as follows:

"a. To administer all fire prevention, suppression and related services provided and financed by the Board of County Commissioners; and to coordinate such activities with the governing bodies of volunteer firemen's associations, and the various volunteer fire companies with the County, to the end of promoting efficient and amicable relationships between such organizations and their services, and the services financed by the Board of County Commissioners.

\* \* \*

"c. To serve as administrative head of the County financed fire force. In such capacity, the Director shall promulgate rules and regulations for the government of the members of such force and may issue administrative orders, including but not limited to duty assignments and trans-

fer of personnel within, or between fire companies. In addition, the Director may institute disciplinary action when necessary, consistent with the Merit System Regulations for Prince George's County. However, the members of the paid force assigned to companies shall be under the command of the chief officers of their respective companies when on duty with the company."

Pursuant to authority vested in him the Director issued Administrative Order No. 1, which among other regulations provides:

"5. The volunteer membership of career fire service personnel, including those assigned to the various bureaus, shall be limited as follows:

"a. No career member can hold volunteer membership in the same company where he is employed as a career member.

"b. No career member can hold any rank above Sergeant as a volunteer.

"c. Only career Sergeants can hold the rank of Sergeant as volunteers.

"d. No member of the career service can hold office in or be a director of a volunteer fire company."

The appellee Milstead, at the time that Administrative Order No. 1 was issued, was a paid fire fighter with the rank of private in the career service stationed at Oxon Hill Station and at the same time was Volunteer Deputy Chief of the Boulevard Heights Fire Station. In January of 1969 he ran for and was elected Volunteer Chief and a member of the Board of Directors of the Boulevard Heights Fire Station, while remaining a private at Oxon Hill.

The appellee Pickerall at the time of the issuance of the order was employed as a County paid private in the career service at the Allentown Road Fire Station and, in January of 1969, ran for and was elected Volunteer

Deputy Chief at the Oxon Hill Station and a member of its Board of Directors. He continued at the same time to serve as a County paid private of the Allentown Road Station.

The appellant contends that the primary reason behind the Director's Administrative Order No. 1 was that the dual role played by paid career men, also serving as officers in the volunteer system, thwarted the effective administration of both volunteers and paid firemen. It cited that appellees were in the anomalous position of being paid privates during daylight hours, taking orders from their paid sergeants and volunteer chief at one station and, perhaps later the same night, being a volunteer or deputy chief exercising authority over paid sergeants and other members of the paid career service, as well as volunteers, at the volunteer company with which each was identified. The appellant did not contend that there was any improper action *per se* involved on behalf of the appellees, other than the violation of the order; however, it did stress that without the proclamation of Administrative Order No. 1, the potential would exist for the generating of personnel problems affecting the morale and efficiency of the department.

The lower court, however, in its opinion reached a different conclusion stating:

> "The single question which is before the Court is whether paragraph 5 and relevant subsections of Administrative Order No. 1 are valid and binding on the members of the paid force. The Court finds that paragraph 5, subsections (b), (c) and (d) were void and of no force and effect from the date of issuance. The Director clearly exceeded the statutory standards of both Article 17 and General Resolution No. 25-1968. Indeed, the Director violated the basic standard which underlies all administrative action, the standard of reasonableness. An administrative order must be reasonable and consistent with

the letter and policy of the statute under which it acts. *Comptroller v. Rockhill, Inc.*, 205 Md. 226 (i.e. A man living in Cheltenham and serving as a volunteer in Upper Marlboro could be a paid employee of Adelphi Station. Under these circumstances the fire companies would be some 20 odd miles apart and the chance of conflict would be entirely too remote to apply this strict ordinance to it.) In the present case the defendants, County Commissioners, could not satisfy the Court, either that the order was reasonable or that it was consistent with enabling law.

"Upon persistent inquiry by the Court, the defendants could proffer no reasonable standard for promulgating the subsections in question of Administrative Order No. 1. There is testimony in the record by the defendants that the County Fire Service was in 'utter chaos' in the absence of such an order. Yet, when asked by the Court for an instance of this chaos, the defendants were unable to cite a single chaotic event involving these plaintiffs or others similarly situated.

"In addition, there was testimony by the defendants that the efficiency of the fire service was seriously impaired and that the plaintiffs were guilty of misconduct. But when asked by the Court for a single concrete example of inefficiency or misconduct to support their bald allegations, the defense admitted that its examples concerned abstract problems."

However, the record reveals that not only Director Clark was concerned with the dual role problem which he sought to remedy by Administrative Order No. 1, but the Merit Board in its proceedings, a transcript of which was filed as an exhibit, also thought the order was properly issued and cited examples where other County departments had adopted regulations governing the outside activities of employees to prevent conflicts of interest from arising.

Also, from the questions asked by the Board and the answers elicited, it is quite apparent that Chairman Snellings and the members were concerned regarding a conflict arising between a volunteer chief, who was also a paid career private, giving orders to a career service sergeant at a fire. The questioning developed that the chief of a volunteer company at times had to take issue with or question the actions of a paid career man assigned to that volunteer company. The testimony emphasizes the untoward situation which may result where a volunteer chief, who is also a paid private at another fire station, may have to go over the head of a career sergeant at the volunteer company where he is chief by reporting a complaint concerning the subject to the County Director.

The appellant particularly cited the example, that without the Administrative Order No. 1, the situation could arise where paid private "Jones" may be employed as a member of the career service at station "A", where "Smith" is the volunteer chief, and "Smith" may be employed as the paid career man at station "B" where "Jones" is the volunteer chief. The opportunity and temptation for the exchange of preferable treatment between Smith and Jones in such a situation is all too obvious to require elaboration.

It would also appear from the record that at least appellee Milstead was of the opinion that the Volunteer Chief was in command at a fire:

> Chairman Snellings: "And it wouldn't really make any difference whether you were a paid fireman or you weren't a paid fireman the volunteer chief is the man who runs the fire."
> Witness Milstead: "In my opinion, yes sir."
> Chairman Snellings: "I mean that is what the law says, isn't this correct?"
> Witness Milstead: "That's correct."
> Counsel Feissner: "I believe it does, yes sir, if he is there."

In view of this placement of authority in the person

of the volunteer chief, we would also be concerned with the situation where a paid career private answered a call to a fire with the volunteer company to which he had been assigned and an adjacent volunteer company of which he was volunteer chief also responded to the alarm. To say the least a fire fighter in such a predicament would be faced with divided allegiance, anent, the dilemma as to which hat to wear, the chief's or the private's? Were Administrative Order No. 1 in effect, he would not have to make such a Hobson's choice but could direct his attention toward either directing or following orders so that the conflagration might be abated.

We now move to a consideration of the role of a court in its review of an administrative order. We think that the part which is to be played by a court upon such a review was well expressed by this Court in *Pressman v. Barnes*, 209 Md. 544, 121 A. 2d 816 (1956). In that case Hyman Pressman, Esq., took general exception to portions of an ordinance which created the office of the Director of Traffic for Baltimore City as well as with administrative regulations promulgated by Henry A. Barnes, the Director, who later achieved national recognition as Traffic Commissioner of New York City. This Court in commenting on the reasonableness of an administrative order stated:

> "* * * Of course, the question whether a particular regulation of an administrative official is arbitrary or unreasonable, or not fairly within the scope of a delegated power, is subject to judicial review; but if the matter is fairly debatable, the court should not substitute its judgment for the judgment of the administrative official who is charged with the duty of promulgating the regulation." 209 Md. at 553.

Elsewhere in *Pressman* this Court addressed itself to the question as to whether the ordinance itself which established the office of the Director of Traffic failed to prescribe sufficient standards for the guidance of the Direc-

tor of Traffic in adopting rules and regulations. In the instant case the question of lack of reasonable standards is not directed to the ordinance *per se* but rather to Administrative Order No. 1. However, we think that in order to determine whether the basic constitutional standard of reasonableness was violated by the Administrative Order in this case, it is helpful to refer to the enabling legislation which vested the Director with the power to issue orders and regulations, the intent of such legislation and the purpose which it was intended to achieve.

The Director of the Department of Fire Protection in the pursuit of his duties is charged through the chain of delegation represented first by the authority vested in the County Commissioners under § 18-1(b) (35) of the Code of Public Local Laws of Prince George's County and in turn by general Resolution No. 25-1968 (The Ordinance) with safeguarding and promoting the public safety in the realm of fire protection. The question which must then be answered is whether Administrative Order No. 1 reasonably bears a substantial relation to the purpose of the Ordinance delegating authority to the Director of the Department of Fire Protection. We think that it does and what is more, Administrative Order No. 1 should be sustained if the question as to its reasonableness were only a fairly debatable matter. We think that the law relating to reasonable standards as expressed in the case of *McBriety v. City of Baltimore*, 219 Md. 223, 148 A. 2d 408 (1959), is quite apposite to the case at bar. In *McBriety*, Judge Horney writing for the Court stated:

> "* * * While the municipal law-making body may not delegate its power to enact ordinances, it is elementary that it may vest in its administrative officers and agencies a measure of discretionary power and authority to make rules and regulations relative to the enforcement of the law for which such officer and agency is responsible. *Leser v. Lowenstein*, 1916, 129 Md. 244, 98 A. 712; *Michigan Central R. Co. v. Powers*, 1906, 201 U. S. 245, 26 S. Ct. 459, 50 L.

Ed. 744; *State v. Spears*, 1953, 57 N. M. 400, 259 P. 2d 356, 39 A.L.R.2d 595. The owners complain that the ordinance lacks guides and standards on which to base the authorized rules and regulations. On the contrary we think the standards are sufficient and as specific as the nature of the subject matters permit. See *Herzinger v. Mayor & City Council of Baltimore*, 1953, 203 Md. 49, 62, 96 A. 2d 3, 98 A. 2d 87. Since the administrative officers are authorized to adopt only such regulations as they deem proper and necessary to enforce the ordinance for the protection of the health, safety, morals and general welfare of the public, it is these standards which must guide them in ascertaining the basic facts on which to predicate the regulations. If a regulation should be attacked, the courts will determine whether it exceeds the standards. In any event the officers are bound by the decisions of this Court as to what does and what does not bear a substantial relation to the public interests. Cf. *Tighe v. Osborne*, 1926, 150 Md. 452, 458, 133 A. 465, 46 A.L.R. 80, and the cases therein cited." 148 A. 2d 418.

Two excellent law review articles covering the history of administrative procedure in Maryland are those written by Judge Reuben Oppenheimer, many years prior to his becoming a member of this Court, *Administrative Law in Maryland*, 2 Md. L. Rev. 185 (1938) and by Leonard E. Cohen, Esq., *Some Aspects of Maryland Administrative Law*, 24 Md. L. Rev. 1 (1964). However, both of these articles deal primarily with the validity of the enabling legislation and the question of "reasonably definite standards" in the legislation which creates administrative boards or agencies concerning the guidelines to be followed by the boards or administrative officials. However, a reading of these articles, as well as the cases we have cited, leads us to the conclusion that an order of an administrative official is valid, if it is within the

scope of the delegated power and has a reasonably substantial relation to the purpose for which the powers were delegated to the administrative official.

In the instant case this Court has no difficulty in concluding that the Ordinance and the attendant delegation of power were valid. Furthermore, contrary to the conclusion of the lower court, we think that Administrative Order No. 1 had a reasonably substantial relation to the purpose for which the powers were delegated to the Director of the Department of Fire Protection. In our view, at the very least, it was a "fairly debatable" question whether restricting the paid career service personnel within the fire department from serving as officers in the volunteer system had a direct relation to the question of public safety. See *Reichelderfer v. Ihrie*, 59 F. 2d 873 (D.C. Cir., 1932), *Hayes v. Civil Service Commission City of Chicago et al*, 108 N.E.2d 505 (Ill. 1952). For a discussion regarding the validity of regulations restricting outside activities of firemen see Annot., 88 A.L.R.2d 1235 (1963) and Antieau, *Municipal Corporation Law,* Vol. 3, § 2209.

In view of what we have stated in this opinion, we reverse the lower court and remand the case for the passage of a decree in conformity with this opinion, including the affirmance of the findings of the Merit Board.

> *Judgment reversed, case remanded for further proceedings consistent with this opinion, appellees to pay costs.*