CLINTON VOLUNTEER FIRE DEPARTMENT, INC.
ET AL. *v.* BOARD OF COUNTY COMMISSIONERS
FOR PRINCE GEORGE'S COUNTY ET AL.

[No. 6, September Term, 1970.]

*Decided November 10, 1970.*

457

*Motion for rehearing filed November 30, 1970; denied December 9, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Thomas P. Smith,* with whom were *Karl G. Feissner, William L. Kaplan, Fred R. Joseph* and *Andrew E. Greenwald* on the brief, for appellants.

*Albert J. Lochte, Associate County Attorney,* with whom were *Lionell M. Lockhart, County Attorney,* and *Harry L. Durity, Deputy County Attorney,* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

In this appeal, Aubrey A. Schultz (Schultz) and Robert E. Gover (Gover), two of the appellants, contend that (1) by virtue of a contract between them and the Clinton Volunteer Fire Department, Inc., a Maryland corporation operating in Prince George's County (Clinton), they are not employees of the Board of County Commissioners of Prince George's County (Board) and (2) the provisions of Section 32-18 of the Code of Public Local Laws of Prince George's County (the Act of 1966 of the Gen-

eral Assembly of Maryland, Ch. 745) are void as being in conflict with Sec. 29 of Art. III of the Constitution of Maryland in regard to the titles of Acts of the General Assembly. Clinton also makes the same contentions as Schultz and Gover. The Circuit Court for Prince George's County (Powers, J.) in a specific performance suit filed by Clinton, Schultz and Gover against the Board ruled against their contentions and dismissed their bill of complaint in an order of January 6, 1970. A petition for reconsideration of this order was denied by the lower court on January 30, 1970; and an appeal was timely entered on the same day to this Court from the order of January 6.

The facts are not in dispute. Gover became a volunteer fireman with Clinton on February 2, 1952. He became a paid fireman on April 19, 1965. Schultz, who had previously worked for the Fire Department of the District of Columbia, came to work for Clinton on January 23, 1967. At first his terms of employment were governed by an oral contract with Clinton. Between the time Gover began work as a paid employee and Schultz's employment by Clinton, the Act of 1966 of the General Assembly of Maryland, Ch. 745 (the Act), amending the provisions of Art. 17, subsection 32-18 of the Code of Public Local Laws of Prince George's County (the Prince George's County Code) became effective on June 1, 1966. The Act repealed subsection 32-18 of the Prince George's County Code as enacted by the Act of 1965, Ch. 437 and enacted a new subsection 32-18 in lieu thereof. The new Act authorized the Board to levy for each tax year commencing July 1, 1966, a special fire tax, in addition to the existing fire tax, up to 10 cents upon each $100.00 of the assessed valuation of real and personal property assessed for County purposes in Prince George's County (except within the limits of the City of Takoma Park), the proceeds of this new special tax to be appropriated by the Board "for the employment of at least two additional full-time paid firemen in each fire station validly in existence in Prince George's County, the acquisition or leasing of land or facilities for new fire house sites and training facilities,

and to supplement financial needs of fire companies based on budget review." The Act further provided:

"The Board of County Commissioners may enter into contracts with individual fire companies whereby volunteer fire companies may employ more full-time paid firemen than authorized by the Board of County Commissioners under this section. Firemen so employed shall be paid by the Board of County Commissioners out of tax moneys due the fire companies under previous sections of this subtitle, and the Board of County Commissioners are authorized to withhold an amount of such tax moneys equal to the amount of tax moneys paid to full-time paid firemen pursuant to such contracts.

"All full-time firemen who meet the standards set out by the Prince George's County Merit Board and who are certified by the Personnel Director as meeting these standards shall be county employees entitled to the provisions of the merit system, whether paid from funds of the county or funds of volunteer fire companies. Full-time paid firemen shall be under the direct supervision and control of the individual fire company chief during working hours."

On July 1, 1966—one month after the effective date of the Act—the Board entered into a written contract with Clinton (the contract being signed on behalf of Clinton by its then President Gover) which provided the following:

"WHEREAS, the Board of County Commissioners has been authorized by Chapter 745, Laws of Maryland, 1966, to enter into contracts with individual fire companies in Prince George's County, to employ more full-time paid firemen than authorized by the Board of County Commissioners and

"WHEREAS, Chapter 745 provides that fire-

men so employed shall be paid by the Board of County Commissioners out of tax monies due the fire companies as provided by the Code of Public Local Laws of Prince George's County and

"WHEREAS, Chapter 745 authorizes the Board of County Commissioners to withhold an amount of such tax monies equal to the amount of tax monies paid to full-time paid firemen pursuant to contracts entered into between the Board of County Commissioners and the several individual fire companies and

"WHEREAS, all full-time paid firemen who meet the standards set out by the Prince George's County Merit Board and who are certified by the Personnel Director as meeting these standards, shall be county employees entitled to the provisions of the County Merit System whether paid from funds of the County or funds of volunteer fire companies and

"WHEREAS, all full-time paid firemen shall be entitled to be covered by social security, workmen's compensation, hospitalization insurance, a retirement system, uniform allowance, and wages and

"WHEREAS, all full-time paid firemen shall be governed by *Chapter I, Rules, Regulations and Procedures for Paid Firefighters in Prince George's County*, the *Personnel Ordinance* adopted September 7, 1962 as amended and the Merit System *Rules and Regulations* adopted December 31, 1963 as amended. Provided, however, that a pay scale may be negotiated for personnel presently employed by the individual fire companies.

"Now be it hereby agreed upon that this contract made between the *County Commissioners for Prince George's County* and the *Clinton Volunteer Fire Company* a recognized fire company

in Prince George's County shall be binding upon both parties until voided by consent of both parties. The aforesaid volunteer fire company hereby authorizes the County Commissioners for Prince George's County to have withheld from their fire tax monies a sufficient sum to cover the cost of all wages and salaries, the employer's share of social security and retirement, hospitalization insurance, workmen's compensation, and uniform allowances. The County Commissioners shall furnish to each individual fire company as soon as possible after the close of the fiscal year a complete financial statement showing the tax monies withheld from each individual fire company for the payment of wages, social security, retirement, hospitalization, workmen's compensation, and uniform allowances."

On July 2, 1968, the Director of Fire Prevention for Prince George's County promulgated Administrative Order No. 1, pursuant to powers vested in him. We passed upon the validity of Administrative Order No. 1 in *Board of County Commissioners for Prince George's County v. Milstead,* 258 Md. 477, 265 A. 2d 879 (1970). This administrative order provides, *inter alia,* the following:

"5. The volunteer membership of career fire service personnel, including those assigned to the various bureaus, shall be limited as follows:

"a. No career member can hold volunteer membership in the same company where he is employed as a career member.

"b. No career member can hold any rank above Sergeant as a volunteer.

"c. Only career Sergeants can hold the rank of Sergeant as volunteers.

"d. No member of the career service can hold office in or be a director of a volunteer fire company."

(258 Md. at 482, 265 A. 2d at 881.)

In *Milstead* we sustained the validity of Administrative Order No. 1, reversing the Circuit Court for Prince George's County which had held Section 5, subsections (b), (c) and (d) of that order invalid as being unreasonable.

On December 16, 1968, two bilateral written contracts were entered into by Clinton and Schultz and Gover, respectively. The two contracts are identical, except for the position, salary and pay scale mentioned later. Taking the Schultz contract for purposes of analysis, that contract provides as follows:

In Article I, that Schultz shall be a paid Captain of Clinton and shall take his directions from the "Chief and/or Board of Directors" of Clinton and shall follow the plans and operations set by the Chief and Board of Directors of Clinton "in accordance with sound fire fighting procedures." It was agreed that "at this time" Schultz "is the Volunteer Chief of" Clinton. Article I then provides:

> "This paragraph is meant to indicate that in the event he [Schultz] should not be the Chief as elected by the membership" of Clinton "then he shall continue as paid Captain of the department. * * * It is further agreed that the paid Captain shall be third in the line of command, with his command superiors the Volunteer Chief and Deputy Chief" * * * and "no paid firemen shall be elected to the Board of Directors, and that no paid firemen, other than paid Captain, shall be elected to a Volunteer command position that is equal to or greater than his paid command position."

In Article II it is provided that Schultz "may be discharged only for just cause" and in the event the question of his discharge arises, he is entitled to a hearing before Clinton's Board of Directors with a reasonable opportunity, not exceeding 7 days, to employ counsel and present evidence. The decision of the Board of Directors is

final unless arbitrary, capricious, fraudulent, unjust or not in accordance with the evidence in which event Schultz has a right of appeal to the Circuit Court for Prince George's County. If ultimately discharged, Schultz shall be entitled to two weeks' salary.

Articles III, IV, V and VI provide for Schultz's loyalty to Clinton, its Board of Directors and officers. Schultz is to refrain from any comment or discussion regarding the competency or ability of the officers, directors or responsible officials of Clinton. His normal hours of work are set forth and it is provided that he "shall be on the same salary and same pay scale as a Police Lieutenant of Prince George's County, Maryland, including the fourth year increment," with provision for over-time work and pay. There are provisions for a proficiency review of services with a written evaluation of these services by the Board of Directors of Clinton every six months. Article VII provides:

> "The Clinton Volunteer Fire Department, Inc. agrees to provide such employee benefits as are now provided to those personnel who are subject to the provisions of the Merit System of Prince George's County, Maryland, including, but not limited to hospitalization insurance, leave schedules and retirement. It is agreed that the parties will enter into a retirement program, the terms of which shall be made the subject of a separate agreement subject to the fact, however, that the retirement agreement eventually agreed upon by the Board of Directors of the Clinton Volunteer Fire Department shall not be less than what is presently provided by the Merit System for Prince George's County, Maryland for an Officer holding the same position as Aubrey A. Schultz."

Article VIII contains provisions for interpretation of the contract in writing, for termination by Schultz upon giving 90 days' written notice to Clinton. Clinton may not

terminate the contract "except under the conditions and for the reasons stated in Article II."

To the Schultz contract, an Addendum is attached, also dated December 16, 1968, which amends Article IV of the contract in regard to the normal hours of work.

The Gover contract provides that Gover shall be a paid Lieutenant of Clinton and shall take his directions from the Senior Officer, Chief, or Board of Directors of Clinton. It is provided further that Gover shall have the same salary on the same pay scale as a police sergeant of Prince George's County including the fourth year increment. The remaining portions of the Gover contract are substantially the same as those in the Schultz contract.

Counsel for Schultz and Gover wrote to the Director of Personnel of Prince George's County on December 24, 1968, in regard to their status and received a reply dated December 27, 1968, and mailed January 10, 1969, as follows:

> "This is in reply to your letter of December 24, 1968, in regard to Messrs. Aubrey A. Schultz and Robert E. Gover, Prince George's County Fire Fighters.
>
> "The agreement between the County Commissioners of Prince George's County and the Clinton Volunteer Fire Department includes the following:
>
> " '. . . . all full-time, paid firemen *who meet the standards set out by the Prince George's County Merit Board and who are certified by the Personnel Director as meeting these standards,* shall be County employees entitled to the provision of the County Merit System whether paid from funds of the County or funds of volunteer fire companies. . . .' (Emphasis supplied)
>
> " '. . . . all full-time, paid firemen shall be governed by *Chapter I, Rules, Regulations and Procedures for Paid Fire Fighters in Prince George's County,* the *Personnel Ordinance*

adopted September 7, 1962, as amended and the Merit System *Rules and Regulations* adopted December 31, 1963, as amended. . . .'

"Pursuant to the foregoing, Messrs. Schultz and Gover received their appointments as full-time paid fire fighters after qualifying in the Fire Fighters' examination administered by this office under the Merit System Rules and Regulations and after being certified for appointment by this office. They were appointed at grades and titles established by the Merit Board pursuant to Chapter III of the Merit System Rules and Regulations and at salaries set by the County Commissioners on recommendation of the Merit Board pursuant to Chapter IV of such Rules and Regulations.

"The Merit Board has not established positions of Lieutenant or Captain in the Fire Protection Department; the County Commissioners have set no salary scales for Lieutenant or Captain in such department; no standards for Lieutenant or Captain have been set out by the Merit Board; Messrs. Schultz and Gover have not been examined by this office and have not been certified by the Personnel Director as meeting standards for Lieutenant or Captain.

"Section 1 of Chapter XV of the Merit System Rules and Regulations provides that 'All appointments, separations, and other personnel transactions must be made on forms as designated by the Director of Personnel.'

"I have received no reports on the designated forms of any personnel changes with respect to Messrs. Schultz and Gover. If I had received reports of changes to Lieutenant and Captain for Messrs. Schultz and Gover, or of other employees of the Fire Protection Department, I could not have approved them or certified them for payroll purposes since such changes would clearly not

conform to the provisions of the Merit System Rules and Regulations cited above.

"In view of the foregoing, I am referring the cases of Messrs. Schultz and Gover to the office of the County Attorney."

Thereafter, on January 14, 1969, the Director of the Department of Fire Protection sent a letter to Schultz, as follows:

"This is to notify you that if you have accepted the office to which you were elected by The Clinton Volunteer Fire Department, Inc., you are thereby discharged from this Department, effective 7:00 A.M., January 15, 1969, because your action would be in violation of Administrative Order No. 1.

"I should like to tell you that it is with regret that we lose your services, and that I wish you good luck in your new job, whatever it may be.

"You may appeal this decision to the Merit Board within five days."

A similar letter was addressed to Gover on January 15, 1969, discharging him effective 7:00 A.M. January 16, 1969.

Clinton, on January 14, 1969, filed a bill of complaint against the Board and its members praying that the contract of July 1, 1966, between Clinton and the Board and the contracts of December 16, 1968, between Clinton and Schultz and Gover be specifically enforced; that the Schultz and Gover contracts be specifically enforced retroactively to the date of signing; that Clinton be awarded suit money, counsel fees, costs and interest; and that Clinton have other and further relief. The Board filed its answer to the bill of complaint on March 4, 1969. The lower court, upon a motion of Clinton, had added Schultz and Gover as parties plaintiff by its order of January 23, 1969.

On August 8, 1969, Clinton filed a motion for summary judgment, to which an opposition was filed by the Board

on September 3. The motion was supported by an affidavit of Schultz and Gover on September 25 and by a Supplemental Affidavit on October 14. In addition to the facts already stated, it was stipulated in open court (and also substantially appears in the affidavits) that (1) Schultz and Gover were both volunteer firemen at Clinton as well as paid men and that they were formerly on the Clinton Board of Directors but withdrew from any directorship prior to entering into the contracts of December 16, 1968, and (2) in Prince George's County there are two classes of paid employees, *i.e.*, (a) contract men who are paid from the taxes due the individual fire tax district and (b) county men who are paid from the special fire tax, denominated as 32-18, and during discussion reference would be made to company men paid under the former, 32-7 of the Prince George's County Code and County men who are paid under the latter, 32-18.

After the submission of memoranda and argument, the lower court, on January 6, 1970, filed its opinion and order denying the motion for summary judgment and dismissing the bill of complaint. After reciting many of the facts already stated, Judge Powers stated in his opinion:

"The Merit System Pay Grade Schedule does not provide for the position of Captain or Lieutenant, nor a pay scale for firemen equal to a County police lieutenant or sergeant.

"The Administrative Order and the Merit System Regulations are incorporated by reference in the contract, so notwithstanding the language of § 32-18 that the company *may employ* additional full-time paid firemen, I find that *all* full-time paid firemen whether employed at the request of the individual fire company under its contract, or by the County are County employees, although paid from public funds raised under different taxing authorizations. Moreover, I construe the language of the Act to mean that all full-time paid firemen must be County employees.

"The County Commissioners are encouraged to exercise close supervision and zeal in overseeing the expenditure of public funds and I see no constitutional violations in the procedure which requires all career firemen to be County employees under the Director of Fire Protection and subject to the Merit System, nor in the provision that a paid fireman cannot hold volunteer membership in the same company where he is employed.

"The contracts between Clinton and Schultz and Gover are without legal authority and hence invalid."

## (1)

In our opinion, Judge Powers correctly decided that *all* full-time paid firemen however employed and paid are County employees and the contracts between Clinton and Schultz and Gover were without legal authority and therefore invalid.

The provisions of § 32-18 are clear and unambiguous in regard to the status of full-time paid firemen who meet the standards set forth by the Prince George's County Merit Board and are certified by the Personnel Director as meeting these standards. The language used is *"all"* full-time paid firemen who meet these standards and are so certified *"shall be county employees."* The language is all inclusive and is mandatory in regard to status, *i.e.*, that they *shall be* county employees. So far as this provision is concerned, the statutory language needs no judicial construction, it being clear and unambiguous. *Town of Somerset v. Montgomery Co. Board of Appeals*, 245 Md. 52, 71, 72, 225 A. 2d 294, 306 (1966) ; *Sec'y of State v. Bryson*, 244 Md. 418, 224 A. 2d 277 (1966) ; *Pineland Lumber Co. v. Miles*, 228 Md. 584, 180 A. 2d 870 (1962) and cases cited therein.

The letter of December 27, 1968, from the Director of Personnel to counsel for Schultz and Gover indicates that, pursuant to the contract of July 1, 1966, between the

Board and Clinton, Schultz and Gover had received appointments as full-time paid fire fighters after qualifying under the Merit System Rules and Regulations and after their certification by the Director of Personnel. This letter also established that the Merit Board had not established the positions of Captain or Lieutenant in the Fire Protection Department, had not set salary scales or standards for those positions, and Schultz and Gover had neither been examined nor certified as meeting standards for those positions.

The contract of July 1, 1966, between the Board and Clinton, pursuant to the provisions of the Act recited that *all* full-time paid firemen who met the Merit Board standards and who are certified "shall be county employees entitled to the provisions of the County Merit System whether paid from funds of the County or funds of volunteer fire companies." The Board is authorized by the contract to withhold from the fire tax monies of Clinton "a sufficient sum to cover the cost of *all* wages and salaries, the employers' share of social security and retirement, hospitalization insurance, workmen's compensation, and uniform allowances." (Emphasis supplied.) As the lower court aptly observed, the provisions of the Merit System Rules and Regulations and of Administrative Order No. 1 are incorporated by reference in the contract. Even if it be assumed for the argument (without deciding), that the doubtful propositions urged by the appellants were sound, *i.e.*, that under the Act the Board and Clinton could provide by contract that Clinton *"may employ"* additional full-time paid firemen who should not be governed by the Merit System Rules and Regulations and Administrative Order No. 1 and should not be county employees, it is clear to us that the contract of July 1, 1966, is to the contrary and that Schultz and Gover are county employees bound by such rules and regulations and Administrative Order No. 1 regardless of from what funds the full-time firemen are paid.[1] The purported contracts

---

1. It appears rather doubtful that the payment of salaries of full-time paid firemen would come within the purposes set forth

of employment of December 16, 1968, between Clinton and Schultz and Gover are contrary to the contract of July 1, 1966, between Clinton and the Board incorporating by reference the Merit System Rules and Regulations and Administrative Order No. 1. Those contracts are, therefore, null, void and of no effect.

(2)

The appellants contend that, in any event, the Act is unconstitutional because it violates the requirement of Art. III, Section 29 of the Maryland Constitution that an act of the General Assembly "shall embrace but one subject, and that shall be described in its title. . . ."

The title to the Act is as follows:

"AN ACT to repeal subsection 32-18 of the Code of Public Local Laws for Prince George's County and to enact a new subsection 32-18 to stand in lieu thereof, being Article 17 of the Code of Public Local Laws of Maryland, title 'Prince George's County,' sub-title 'Fire Companies,' providing authority for an additional fire tax up

---

in prior sections of Chapter 32 of the Prince George's County Code. Section 32-1 (b) states that this other tax money shall be disbursed "only for the purpose of purchasing, repairing, housing, operating and maintaining fire fighting and rescue apparatus and equipment, and insurance, and to encourage the formulation of volunteer rescue units as auxiliaries to member fire companies whenever and wherever needed." Section 32-10 provides that most funds received by fire companies "shall be used for the purpose of purchasing, repairing, replacing, operating and maintaining its fire fighting equipment and apparatus and the housing of the same. . . ." It may well be argued that the expressed purposes do not include salaries for full-time paid firemen and indeed the implication is that they were not intended to be included. On the other hand, paragraph 4 of the Act indicates that more full-time paid firemen employed by fire companies than authorized by the Board, if pursuant to a contract between the Board and the fire company, may be paid by the Board out of tax monies due the fire companies under previous sections of Chapter 32, with a provision for appropriate withholding of such tax monies for that purpose. It is, however, unnecessary for this Court to pass upon this question for the decision in this case in view of the ground upon which we have decided that Schultz and Gover were county employees and their employment contracts of December 16, 1968, with Clinton were invalid. .

to ten cents (10¢) upon each one hundred dollars of assessed valuation of real and personal property assessed for County tax purposes in Prince George's County, except the area of said County within the limits of the City of Takoma Park, and to provide that such tax shall be used by the Board of County Commissioners for Prince George's County to hire paid firemen who shall be County employees at salaries determined under the Merit System for Prince George's County and who shall be assigned to work at such volunteer Fire Companies that request the service of said firemen, PROVIDED THAT AT LEAST TWO PAID FIREMEN SHALL BE ASSIGNED TO EACH FIRE COMPANY; and further PROVIDING that the Board may EXPEND such tax funds for the acquisition or leasing of land or facilities AND TRAINING FACILITIES, AND SUPPLEMENTING BUDGETS OF FIRE COMPANIES."

We have already set out in full the body of the Act and thus it need not be repeated here. The appellants contend that paragraphs 4 and 5 of the Act in regard to the power of the Board to enter into contracts with fire companies which may employ more full-time paid firemen than authorized by the Board and the requirement that all full-time paid firemen who meet the Merit Board standards and are certified, shall be county employees regardless of from what funds paid, are extraneous to the other provisions of the Act, and are new subjects not reasonably within the purview of the title of the Act.

In our opinion, the Act contains one subject, *i.e.*, fire companies in Prince George's County. This is mentioned in the first five lines of the title when it is stated that the Act is one "to repeal subsection 32-18 of the Code of Public Local Laws for Prince George's County and to enact a new subsection 32-18 to stand in lieu thereof, being Article 17 of the Code of Public Local Laws of Maryland,

title 'Prince George's County,' subtitle 'Fire Companies.' " We have held that such a designation is in itself sufficient for compliance with Art. III, Section 29 of the Maryland Constitution. *Beauchamp v. Somerset County Sanitary Commission,* 256 Md. 541, 261 A. 2d 461 (1970) ; *Fitzgerald v. Somerset County Sanitary Commission,* 231 Md. 242, 189 A. 2d 601 (1963).

If, however, further description of the body of the Act is added to the title, such an addition need not be an abstract of the body of the Act, so long as such further description is not deceptive. If the challenged provisions in the body of the statute are germane to the subject described in the title so that a person reading the title could be fairly advised of the subject matter, then the title will be deemed to have complied with the constitutional requirement.

As Judge (later Chief Judge) Prescott for the Court stated in *Leonardo v. Board of County Commissioners of St. Mary's County,* 214 Md. 287, 298, 299, 134 A. 2d 284, 289 (1957), *cert. denied,* 355 U. S. 906, *reh. denied,* 355 U. S. 967 :

> "Section 29 of Article 3 of the Constitution has been involved in cases before this Court on numerous occasions. It has been included in the last three Constitutions of this State, and its purposes are to prevent the combination in one act of several distinct and incongruous subjects, and to inform the members of the legislature of the nature of the bills introduced, which are usually read to them by their titles only, and to permit the citizens of the State to know of proposed legislation. The general rule of its construction is that every presumption favors the validity of the statute, and reasonable doubt is enough to sustain it."

> \* \* \*

> "This Court has consistently held that the Constitution is complied with if the title of the legislation *fairly* advises the legislature and the

public of the real nature and subject matter of the legislation sought to be enacted. *Shipley v. State,* 201 Md. 96, 102, 93 A. 2d 67. In order to do this, it is unnecessary that the title be an abstract of the text of the proposed statute, nor need mention be made of the means and the methods by which its purpose is to be accomplished. *Bond v. Mayor and C. C.,* 116 Md. 683, 688, 82 A. 978; *Painter v. Mattfeldt,* 119 Md. 466, 87 A. 413."

See also *Clark's Brooklyn Park, Inc. v. Hranicka,* 246 Md. 178, 227 A. 2d 726 (1967) citing *Leonardo* with approval.

Paragraphs 4 and 5 of the Act are germane to the subject of the Act and the title is not deceptive. Their provisions are not entirely foreign to the subject matter of the Act and "in flagrant disregard to the constitutional provision." *Neuenschwander v. Washington Suburban Sanitary Commission,* 187 Md. 67 at 80, 48 A. 2d 593 at 600 (1946).

As Chief Judge Hammond stated for the Court in *Panitz v. Comptroller of the Treasury,* 247 Md. 501, 511-512, 232 A. 2d 891, 897 (1967):

"As long ago as 1879, our predecessors said in *Baltimore v. Reitz,* 50 Md. 574, 579, that 'if several sections of the law refer to and are germane to the same subject-matter, which is described in its title, it is considered as embracing but a single subject, and as satisfying the requirements of the Constitution in this respect.' This construction has been reiterated and reaffirmed many times. See Everstine, 'Titles of Legislative Acts,' 9 Md.L.Rev. 196, 205; *Allied American Mutual Fire Ins. Co. v. Commissioner of Motor Vehicles,* 219 Md. 607, 614, 150 A. 2d 421; *Beshore v. Town of Bel Air,* 237 Md. 398, 412, 206 A. 2d 678."

*Order affirmed, the appellants to pay the costs.*