ANNE ARUNDEL COUNTY, MARYLAND, ET AL. *v.*
BOARD OF EDUCATION OF ANNE ARUNDEL
COUNTY, ET AL.

[Nos. 31, 186 & 278, September Term, 1967.]

514

*Decided January 19, 1968.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS and SINGLEY, JJ.

*John M. Court, Assistant County Solicitor,* with whom was *Bennett Crain, Jr., County Sol'citor,* on the brief, for appellants in Cases Nos. 31 & 186; *Bennett Crain, Jr., County Solicitor,* with whom was *John M. Court, Assistant County Solicitor,* on. the brief, for appellants in Case No. 278.

Thomas J. Wohlgemuth (in all three cases) for appellees.

Amicus curiae brief filed in Cases Nos. 31 and 278 by Maryland County Commissioners Association. *William O. Doub, H. Warren Buckler* and *Evan Crossley* on the brief.

HAMMOND, C. J., delivered the opinion of the Court.

We are here concerned, in deciding appeals in three cases of the September Term, 1967, with skirmishes in a running battle between Anne Arundel County and the Board of Education of Anne Arundel County over the power of the County to control expenditures of the Board and the limits of that power. Argued together were Number 186, filed in the Circuit Court on July 26, 1966, a mandamus action by the Board against officials of the County to compel payment by the County to the Board of rent for quarters leased by the Board to house the Superintendent of Schools and his official family (a mandatory item in the opinion of the Board and a discretionary item in

the opinion of the County), in which Judge Melvin issued the writ, and No. 31, filed in the Circuit Court on August 31, 1966, by the County against the Board for a decree declaring the County's power to deny the rent for the premises leased by the Board for the staff of the Superintendent, in which Judge Evans sustained the Board's demurrer on the ground that the County had no standing to sue. Argued immediately thereafter was No. 278, a suit by the County against the Board for an injunction restraining the Board from spending in excess of $440,000, the amount appropriated and allocated by the County for a capital improvement of a school project, the "Nike Site School Project" (the Board, it was alleged, had removed $29,000 from the County appropriation for the "Area Secondary School—1969" and added that amount to the $440,000 it intended to expend for the "Nike Site School Project"), in which Judge Macgill held that neither Anne Arundel County nor its controller had standing to maintain the action for an injunction and dismissed the bill.

## I—Number 186

We think that the mandamus action was correctly decided by Judge Melvin and find it appropriate to rely on his opinion therein, as follows:

"By its amended petition the Board of Education prays that a Writ of Mandamus issue directing the defendants (Anne Arundel County, Maryland; the Controller of Anne Arundel County, Maryland; and the County Council of Anne Arundel County, Maryland) to '(a) pay over to the Plaintiff the sum of $54,000 for rent of administration building annex illegally deleted from the school budget and (b) to increase the tax levy rate in Anne Arundel County to insure the financing of the same if necessary.'

"The evidence shows that this sum was included by the plaintiff in its school budget for the fiscal year 1966-67 for the purpose of paying a year's rent on an 'administration building annex' leased by the plaintiff. The lease agreement provides that the building is 'to be used for office purposes for the lessee.'

"The Board's school budget, filed as an exhibit with the amended petition, explains the need for the office space in these words:

'Administration Building Annexes—The administrative and supervisory staffs of the Board of Education increase proportionately as more and more children are enrolled in the county's schools. The present administration building, used thirty years ago as a high school, has long been inadequate. Several years ago, it became necessary to rent additional space on West Street, and at Legion Avenue to provide facilities adequate to house the Department of Special Services, and the Department of Instruction. This year, arrangements have been completed to lease a single building sufficiently large to house these two departments, and to relieve somewhat, the crowded conditions that continue to exist in the administration building on Green Street. The Director of Construction and the Supervisors of Maintenance and Operation will continue to maintain offices in the building once known as the Pasadena Elementary School.'

"On March 1, 1966, pursuant to § 68 and 68A of Article 77 of the Maryland Code (1965 Replacement Volume) the Board submitted its budget to the County Executive who failed to include the $54,000 rent money for the administration annex in the proposed county budget which he submitted to the County Council. On May 16, 1966, before the passage of the budget ordinance, the Board, by its President, wrote to the County Council requesting that the $54,000 denied by the County Executive be restored. The Council did not do so, and no funds were appropriated by the county for the requested rent.

"The Board's position in this dispute is that the County Council is under a mandatory duty to provide the rent requested. The Council's position is that it is a matter entirely within the Council's discretion whether or not to do so.

"In support of its position the Board cites § 160 of Article 77 of the Maryland Code (1965 Replacement Volume) which reads as follows:

*'The county board of education shall provide the office of the county superintendent of schools with ample, convenient, and comfortable quarters, and with adequate clerical equipment;* and the county superintendent of schools and his professional assistants shall be provided with such means of transportation as are necessary for the effective and efficient performance of their official duties. They shall be reimbursed for all actual and necessary traveling and other expenses and disbursements incurred or made by them in the performance of their official duties, and no part of the traveling or personal expenses of the county superintendent and his professional assistants incurred in the performance of their official duties shall be included in or counted as a part of their annual salary.

*'The board of county commissioners of each county shall not deny any part of the amount requested for any one school year by the county board of education to be raised by local taxation in order to carry out the provisions of this section.'* (Emphasis supplied.)

"The Board contends that in leasing the administration building annex it was carrying out its legal duty to provide the 'office of the county superintendent of schools with ample, convenient, and comfortable quarters, and with adequate clerical equipment,' and that having done so the Council cannot legally deny any part of the amounts requested to pay the rent therefor. The defendants contend that the above-quoted Section 160 does not apply to them at all, but that even if it does apply, the requirement to provide 'quarters' for the 'office of the county superintendent' simply means that 'the man who is county superintendent shall be provided with quarters befitting the importance of his post,' and that since space for the superintendent's per-

sonal office and that of his administrative assistant and one assistant superintendent, with their clerical help, a conference room and lavatories, are already provided elswehere, there is no duty upon the Board to provide more space and consequently no duty upon the Council to provide funds for the additional space. I cannot agree that, within the context of this section, the term 'office of the superintendent' is so limited.

"Section 159 [1] of the Maryland Code, supra, imposes upon the county superintendent responsibility for the 'administration of *the office of the county superintendent of schools.*' (Emphasis supplied.) By law, the county superintendent is the executive officer, the secretary and treasurer of the county board of education. It is on his advice that the educational policies of the county are determined (§ 53 and § 54). Through him *'and his professional assistants'* the county board of education exercises 'control and supervision over the public school system of the county' (§ 55). (Emphasis supplied.) It would unduly prolong this opinion to enumerate all the detailed duties and responsibilities of the superintendent which are set forth throughout Article 77. Suffice it to say that they are many and varied and as stated by the Court of Appeals in *Bd. of Ed. v. Montgomery County,* 237 Md. 191, 'show the important role the superintendent plays in carrying out the general policies of the State Board of Education.'

"In *Bd. of Ed. v. Montgomery County,* supra, the Court of Appeals said that Article 77 is 'part of a carefully conceived legislative structure in which the respective powers and limitations of local school boards, the State Board of Education and county governments are delineated and balanced.' In that case the Court, after referring to the important role of the county superintendent, held that the professional and clerical as-

1. Unless otherwise indicated, section numbers mentioned in this opinion refer to Article 77 of the Annotated Code of Maryland (1965 Replacement Volume).

sistants deemed necessary by him, subject to the approval of the Board, are a vital part of the over-all educational policy of the State Board, and under the law the number of such assistants 'is to be fixed by the Board and is not subject to curtailment by the Council.' Thus the number of professional and clerical assistants which the superintendent and the Board deem necessary to enable the superintendent to properly carry out the administrative duties 'of the office of the county superintendent of schools' is a matter over which the County Council has no control. As said by the Court, 'It was for the Legislature to determine in what respects to give final decision as to financial needs to the educational expertise of the Board and when the general appropriating function of the Council was to govern.'

"It is the opinion of this court that, like the sections construed by the Court of Appeals in *Bd. of Ed. v. Montgomery County,* supra, Section 160 is also part of the 'carefully conceived legislative structure' referred to in that case, and that the duty imposed upon the Board by that section to 'provide the office of the county superintendent of schools with ample, convenient and comfortable quarters' includes the duty to provide 'ample, convenient and comfortable' office space ['quarters'] not only for the superintendent himself but for the personnel appointed by the Board to assist him in carrying out the duties of his office.

"In this court's view, if the legislature had intended that the Board's only duty under Section 160 was to provide the county superintendent with an 'ample, convenient and comfortable office, with adequate clerical equipment,' it would have said so in just those terms. The defendants, nevertheless, argue that within the context of Section 160, 'the office of the county superintendent of schools' should be construed to mean 'the county superintendent of schools.' So construed, Section 160 would read as follows: 'The county board of education shall provide the county superintendent of

schools with ample, convenient, and comfortable quarters, and with adequate clerical equipment; * * *.' In this context the word 'quarters' could well mean 'living accommodations.' See Webster's Third New International Dictionary. Needless to say, no one has yet suggested that Section 160 requires the Board to provide the superintendent with such an emolument.

"The preceding section, Section 159, imposes upon the county superintendent the duty to 'nominate, for appointment by the county board of education, all the professional, clerical, statistical and stenographic assistants of *the office [of the county superintendent of schools]*.' (Emphasis supplied.) This clearly shows the legislature contemplated that the *office of the county superintendent of schools* would include more than the person who holds the *position* of county superintendent. Indeed, the defendants virtually concede this to be so when they suggest in their brief that 'quarters' for the 'office' should be construed to include office space for the superintendent, an administrative assistant and one assistant superintendent, 'together with an appropriate number of secretaries or stenographers.'

"The difficulty with the defendants' argument in this regard is that the evidence shows that the 'assistants of the office' number many times the number suggested by them. It is also to be noted that there is no evidence that the 'quarters' provided by the Board in the administration annex building are anything more or less than 'ample, convenient and comfortable' as required by Section 160, or that they are being used by anyone who is not assisting the county superintendent in carrying out the manifold duties required of him by law. This being so the County Council is specifically required by the terms of the section to furnish the necessary funds to pay for the quarters so provided.

"But as mentioned above, the defendants contend that Section 160 does not control the issue presented

by this case. Instead, they say, Section 68A controls. This section, passed at the 1965 Session of the General Assembly, reads as follows:

'In Anne Arundel County, the following provisions shall apply notwithstanding anything to the contrary in this article. The annual school budget shall be submitted to the county executive, in such form as is required by the Anne Arundel County charter, not less than one hundred twenty days prior to the end of the fiscal year of said county. The county executive shall indicate in writing what item or items of the annual budget of the County Board of Education have been denied in whole or in part, and the reasons for the denial in whole or in part of the respective items. The County Council may, in their discretion, restore any or all items denied by the county executive in said budget submitted by the Board of Education. Should the County Council appropriate to the County Board of Education a sum greater than the 40-cent levy aforesaid, it may, but need not, establish a separate school levy or tax.'

"Defendants argue that since the county executive denied the requested rent money, the County Council was under no legal obligation to restore the item so denied. This court cannot agree.

"It seems clear that the primary purpose of Section 68A was to change the *procedural* requirements of Section 68 relating to the school budget in the following respects:

(a) To require that the Board's school budget be submitted in the first instance to the county executive, rather than directly to the County Council as provided by Section 68.

(b) To provide that the county executive, rather than the County Council, as required by Section 68, 'shall indicate in writing what item or items' of the Board's budget have been denied and the reasons for such denial.

(c) To require the Board to submit its budget to the County not less than *120* days prior to the end of the County's fiscal year, rather than '20 days before the usual date for levying county taxes' as Section 68 provides.

"These changes in the law were obviously made to accommodate certain *procedural requirements* of the County Charter. See Article VII of the County Charter, Budgetary and Fiscal Procedures.

"The real dispute in this case arises concerning the effect upon the mandatory provisions of Section 160 of the further provision of Section 68A that *'The County Council may, in their discretion, restore any or all items denied by the county executive in the said budget submitted by the Board of Education.'* Defendants contend that this provision is irreconcilable with Section 160 and since Section 68A is a later enactment, the earlier enactment must be disregarded insofar as it *requires* the County Council to provide the requested funds. This court finds no such inconsistency between the two sections requiring a holding that the mandatory provisions of Section 160 no longer apply in Anne Arundel County. As said by the Court of Appeals in *Pressman v. Elgin,* 187 Md. 446, p. 450 :

'The law does not favor repeals by implication, unless there is a manifest inconsistency between the earlier and later statutes, or unless their provisions are so repugnant and irreconcilable that they cannot stand together. No Court should ever hold that a statute has been repealed except where the language of a later statute shows plainly that the Legislature intended a repeal. *State v. Clifton,* 177 Md. 572, 10 A. 2d 703; *Buchholtz v. Hill,* 178 Md. 280, 288, 13 A. 2d 348. Statutes which relate to the same subject-matter and are not inconsistent with each other are in *pari materia,* and should be construed together so that they will harmonize with each other and be consistent with their general object and scope, even

though they were passed at different times and contain no reference to each other.'

"Under the County Charter the Council may not *'increase* [emphasis supplied] any expenditure recommended by the County Executive for current or capital purposes.' (Section 709, County Charter.) In the court's view the provision in Section 68A that the Council *may* increase the county executive's proposals with respect to the school budget, *and no other,* serves merely to make abundantly clear that in spite of Section 709 of the Charter, the Council *does* have the authority, with respect to fiscal matters affecting the school system, to increase the proposals of the county executive. The appropriating authority under the County Charter is the County Council and it is to that body that Section 160 directs its mandate, not to the county executive. The mandate of the section, *directed to the County Council,* is 'not to deny any part of the amount requested * * * *by the county board of education.'* (Emphasis supplied.) The fact that the county executive did not propose to the Council that it obey this mandate did not thereby absolve the Council of its legal duty to do so.

"Defendants' argument presupposes that the county executive, in the first instance, has the power to deny any items in the school budget submitted to him by the Board. It is true that Section 704 of the County Charter allows the county executive to amend the budget proposals submitted to him by agencies *'of the county government.'* But, 'The board of education is not a part of the executive branch of the county government nor an agency under its control.' *Bd. of Ed. v. Montgomery County,* supra. Nevertheless, assuming, without deciding, that by implication Section 68A gives the county executive power to decrease the budget proposals submitted to him by the Board, such *implied* power is certainly subject to at least the same *specific* limitations imposed by law upon the Council. Section 709 of the Charter provides that 'the County

Council may decrease or delete any items in the budget *except those required by the public general laws of this State * * *.'* (Emphasis supplied.) Section 160 of Article 77 is a public general law of the State, and, as already determined in this opinion, it *requires* that rent for the administration building annex not be denied to the plaintiff.

"The result is that this court finds nothing in Section 68A, or elsewhere in the law, which gives the *county executive* the power to 'deny' to the plaintiff funds which Section 160 requires the County Council to furnish to it.

"Since the county executive lacks the power to delete mandatory items from the Board's budget, if he in fact does so before submitting the county budget to the County Council, it would be an anomalous situation indeed to hold that because he exercised a power he did not have, the County Council is not required to obey the law. The provision of Section 68A that 'The County Council may, *in their discretion,* restore' items of the school budget 'denied' by the county executive presupposes that he has not denied those items which the law says must not be denied.

"For the reasons set forth herein a Writ of Mandamus will be issued directing payment to the plaintiff of the requested funds.

"As to the defendant, Anne Arundel County, Maryland, a body corporate, the court finds that it is an improper party defendant in these proceedings and its demurrer to the petition filed against it will, on that ground, be sustained."

We add that insofar as the County relies on the charter provisions of Anne Arundel County, Sections 701 to 722 as differing from and controlling the provisions of Code (1965 Repl. Vol.), Art. 77, § 68, it leans on a reed so weak as to be incapable of any of the support it seeks. We held in *Montgomery County v. Yost,* 223 Md. 150, 156, that the budgetary provisions of the Montgomery County Charter (Montgomery County,

like Anne Arundel County, is a home rule County) did not substantively embrace the County Board of Education, saying:

> "Moreover, there is little doubt that the charter provisions were intended by the adopting voters to embrace the board of education and to require it to be as fully amenable to the charter budgetary procedures as the county departments and agencies are required to be. But, as we see it, the board of education, like the bi-county agencies or commissions, is not subject to the charter budgetary requirements. The bi-county commissions, which operate under special 'local' laws applicable only to Montgomery and Prince George's Counties, were purposely excluded from complying with the budgetary procedures of Montgomery County in order to avoid any possibility of a conflict between the two counties with respect to fiscal matters. It is for this reason, *i.e.*, the existence of conflicts and inconsistencies between the provisions of charter Art. VI, §§ 1 and 2, *supra,* and code Art. 77, § 68, *supra,* that the board of education must also be excluded from the operation and effect of the budgetary procedures required by the county charter. This is so because some of the conflicts and inconsistencies between the code and charter provisions are clearly irreconcilable.
>
> "Section 1 of Article XI-A of the Constitution of Maryland makes it clear that conflicts or inconsistencies between a county charter and a public general law must be resolved in favor of the latter." (Footnote omitted.)

*See also Bd. of Ed. v. Montgomery County,* 237 Md. 191, 197.

### II—Number 31

We do not reach the question of Anne Arundel County's standing to sue the County Board of Education because in our view if it be assumed that the County had standing and the court had made a declaration of the applicable law, as the County requested, the declaration, to have been correct, must

have been essentially the same in expression and result as the opinion of Judge Melvin in Number 186.

### III—Number 278

Again we do not reach the question of the County's standing to sue. If we assume that the County can appropriate and allocate at its discretion whatever sums it desires, above the minimums specified by Art. 77 of the Code, for the building or improvement of schools and require the Board to use an appropriation only for the particular purpose for which it was appropriated, it is apparent that the relief the County sought in its bill for an injunction was much broader than it has a right to require. The prayer for relief in the County's amended "application for injunction" reads:

> "That the Defendants, jointly and severally, be enjoined from issuing any further Purchase Orders relative to the 'Nike Site Renovation Project'; from encumbering any funds in excess of $440,000; from paying *any money* on any purchase order or purchase orders when such action would cause the total amount of funds encumbered to exceed $440,000; and from receiving any goods or materials as a result of said purchase orders issued subsequent to the time when the amount of money encumbered for the 'Nike Site Renovation Project' reached $440,000, all until such time as the duly constituted legislative authority for Anne Arundel County, Maryland may in its discretion allocate supplemental funds for said items in the Capital Budget." (Emphasis added.)

The record shows that the Board receives for capital additions and improvements appropriations of State and Federal funds as well as of County funds. There was no showing that State or Federal funds had been or were to be misapplied or that the Board did not have available and could not properly utilize State or Federal funds to the extent of the $29,000 it needed to finish the Nike Site School. In the light of Code (1967 Repl. Vol.), Art. 31, §§ 3 and 5, there is no attempt to suggest that the Board could bind the County if it issued pur-

chase orders for materials, supplies or equipment for which it did not have the money to pay, and, in any event, "the board of education is not a part of the executive branch of the county government nor an agency under its control." *Bd. of Ed. v. Montgomery County,* 237 Md. 191, 197. The fact that the members of the Board could become liable for obligations the Board incurred but could not pay for does not entitle the County to prevent them from so becoming personally liable. Apart from the general question of the County's standing to sue, we think it has no right to have the Board enjoined "from issuing any further Purchase Orders relative to the 'Nike Site Renovation Project' " or from paying *any money* on any such purchase order if this would cause the total to be expended to exceed the $440,000 the County had appropriated (the excess could be State or Federal funds). If it be assumed that the County could precisely limit the Board's spending of funds raised by the County for a particular capital improvement, it does not follow that the County can limit the Board, an independent agency, in its spending of State or Federal funds on that improvement.

*Orders in numbers 186 and 31 affirmed; decree in number 278 affirmed; costs in all three cases to be paid by Anne Arundel County.*