508 A.2d 478

RONALD FISHKIND REALTY

v.

Denise SAMPSON.

No. 146, Sept. Term, 1984.

Court of Appeals of Maryland.

May 21, 1986.

Ira C. Cooke and M. Albert Figinski (Stuart R. Berger & Melnicove, Kaufman, Weiner & Smouse, P.A., on brief), Baltimore, for appellant.

E. Clinton Bamberger, Jr., Baltimore (Christine Barilla appearing pursuant to Rule 18 of the Rules Governing Admission to the Bar of Maryland), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

ELDRIDGE, Judge.

The General Assembly has enacted different statutes which permit tenants to pay rent into escrow when lead paint hazards arise. The issue before us concerns which one of the statutes affords a remedy to Baltimore City tenants under the circumstances of this case.

## I.

The case began when Denise Sampson filed a rent escrow action in the District Court of Maryland, sitting in Baltimore City, to compel her landlord, Ronald Fishkind Realty, to remove from her home any lead based paint easily accessible to children pursuant to Maryland Code (1974,

1981 Repl.Vol.), § 8–211.1 of the Real Property Article.[1] After a full trial, the District Court held that in Baltimore City, § 9.9 of the Code of Public Local Laws of Baltimore City governed, rather than § 8–211.1 of the Real Property Article, and that its requirements, namely removal by the landlord only of flaking or peeling paint, had previously been met.[2] Therefore the district judge refused to allow Ms. Sampson to compel by rent escrow the removal of intact lead based paint "easily accessible to children" but not in violation of the Baltimore City Housing Code.

Ms. Sampson appealed to the Circuit Court for Baltimore City, where the parties proceeded on the following stipulation:

1.  Section 8–211.1 provides in pertinent part:
    "Notwithstanding any provision of law or any agreement, whether written or oral, if a lessor fails to remove ... lead-based paint from any ... surface ... that is easily accessible to a child ... within 20 days after notice ... the lessee may deposit his rent in an escrow account...." § 8–211.1(a), Real Property Article, Md.Code (1981).

2.  Section 9.9 of the Code of Public Local Laws of Baltimore City provides in pertinent part that a Baltimore City tenant may pay rent into court and assert
    "... [t]hat there exists upon the leased premises, ... a condition or conditions which constitute, or if not promptly corrected, will constitute a ... serious threat to the life, health, or safety of occupants thereof, including but not limited to ... the existence of paint containing lead pigment on surfaces within the dwelling, provided that the landlord has notice of the painted surfaces, and if such condition would be in violation of the Baltimore City Housing Code."
    The Housing Code, Baltimore City Code (1983 Repl.Vol.), Art. 13, Housing and Urban Renewal, § 706, prohibits "loose or peeling" interior paint and "flaking, loose or defective" exterior paint.
    Only when the Commissioner of Health determines that a child has lead in his blood, and that lead based paint presents a health hazard, do the Baltimore City regulations require the removal of intact lead paint from "potential biting surface[s] (generally defined as 4' high and 4" in depth," *e.g.,* "doors, trim moulding, window frames, radiators, stair banisters, toys and furniture." "Intact surfaces in good condition need not be abated unless they present a potential biting surface." *Rules and Regulations Governing Housing,* Regulations 5 and 6, adopted Sept. 30 and Oct. 13, 1983, pursuant to Baltimore City Code (1983 Repl.Vol.), Art. 13, Housing and Urban Renewal, § 401.

"The defendant, R. Fishkind Realty, is the owner and lessor of a single-family dwelling at 1841 Presstman Street in Baltimore, Maryland. Denise Sampson is the tenant of R. Fishkind Realty and leases the residence at 1841 Presstman Street. She occupies that residence with her children, including a two-year old daughter, Gwendolyn. Gwendolyn has been tested for lead in her blood. Dr. Eshai testified that the child does not have an elevated lead level and is not poisoned. When this action was instituted in the District Court there was lead-based paint on the interior and exterior surfaces of the house at 1841 Presstman Street. Before the action was tried in the District Court, the landlord removed the loose and flaking paint from the property to the satisfaction of an inspector for the Baltimore City Health Department, and in compliance with Section 706 of the Housing Code of Baltimore City. At the time of the trial, there was intact lead-based paint on the exterior and interior surfaces of the house that are easily accessible to Gwendolyn, the child of Denise Sampson. The plaintiff does not allege that the landlord applied lead-based paint at the premises."

On these agreed facts, the circuit court reversed the decision of the District Court, holding that § 8–211.1 of the Real Property Article of the Maryland Code applied in Baltimore City "notwithstanding the existence of § 9.9 of the Public Local Laws." The circuit court's rationale was that the General Assembly intended to make § 8–211.1 applicable throughout the State, without regard to existing laws, that § 8–211.1 did not conflict with § 9.9 of the Public Local Laws, and that there was no persuasive administrative interpretation equating § 8–211.1 with § 9.9. The circuit court remanded the case to the District Court for entry of an order providing for payment of rent into escrow pursuant to § 8–211.1. Later, after a hearing, the circuit court denied the defendant's motion for a new trial.

The defendant filed a petition for writ of certiorari in this Court which we granted.[3]  We also permitted the City of Baltimore and the State of Maryland, Department of Health and Mental Hygiene, to file briefs as amici curiae.  The question presented for review is:

"Did the Circuit Court for Baltimore City err in ordering the District Court to enter an order providing that rent be paid into escrow pursuant to section 8–211.1 of the Real Property Article, Md.Code, in a case where it was stipulated that the child of a tenant 'does not have an elevated lead level and is not poisoned' and where '[b]efore the action was tried in the District Court, the landlord removed the loose and flaking paint from the property to the satisfaction of an inspector of the Baltimore City Health Department and in compliance with Section 706 of the Housing Code of Baltimore City,' made applicable by Section 9.9 of the Code of Public Local Laws of Baltimore City?"

The defendant landlord argues that the circuit judge misread the statutes.  It suggests that we read the pertinent statutes in any one of three different ways, each of which requires reversal of the circuit court's decision placing Ms. Sampson's rent in escrow.  The first proffered reading of the statutes is that § 8–211.1 of the Real Property Article applies not to the facts stipulated, but to different lead paint problems, leaving the plaintiff only with the remedy afforded by § 9.9 of the local laws of Baltimore City.  The second is that § 8–211.1 applies but that its undefined terms in effect incorporate the lead paint abatement standards of § 9.9.  The third is that § 8–211.1, a public general law, and § 9.9, a public local law, conflict, and that § 9.9 displaces § 8–211.1.

As we shall explain below, we find none of these constructions of the statutes persuasive.  Instead, we agree

---

**3.**  Section 12–305 of the Courts and Judicial Proceedings Article allows a party to petition this Court to review any case in which a final judgment has been rendered by a circuit court on appeal from the District Court.

with the plaintiff, who maintains that § 8–211.1 does apply in the circumstances stipulated, that it has its own meaning independent from that of § 9.9, that it operates concurrently with § 9.9, and that it does not conflict with § 9.9.

## II.

Preliminarily, we shall dispose of certain matters conceded by the parties or peripheral to the outcome.

The plaintiff seeks relief under § 8–211.1, a part of the Real Property Article dealing solely with lead paint rent escrow; she seeks no relief under § 8–211,[4] the part of the Real Property Article dealing generally with rent escrow and including lead paint hazards among the grounds for placing rent in escrow. (Plaintiff's brief, p. 9). The defendant agrees that § 8–211 is inapplicable to this case, except as a clue to the interpretation of the other statutes. (Defendant's brief, p. 26).

The plaintiff does not dispute the portion of the District Court's ruling addressing the defendant's compliance with § 706 of the Baltimore City Housing Code concerning paint. The District Judge ruled in part:

"The decision of this court is on the affirmative action in view of the certification by (inaudible) that the conditions

---

**4.** Code (1974, 1981 Repl.Vol., 1985 Cum.Supp.), § 8–211(e) of the Real Property Article

"... provides a remedy [rent escrow] and imposes an obligation upon landlords to repair and eliminate conditions and defects which constitute, or if not promptly corrected will constitute, ... a serious and substantial threat to the life, health or safety of occupants, including, but not limited to:

    (1) ...
    (2) ...
    (3) ...
    (4) The existence of paint containing lead pigment on surfaces within the dwelling unit; ...."

Section 8–211(o) provides:

"In the event any county or Baltimore City is subject to a public local law or has enacted an ordinance or ordinances comparable in subject matter to this section, commonly referred to as a 'Rent Escrow Law,' any such ordinance or ordinances shall supercede the provisions of this section."

found and complained of which fell within the regulations utilized by the local department of health ... lead paint inspectors for lead paint violations and the certification that those conditions and violations no longer exist that no lead paint violations currently exist on the premises, that the affirmative action is denied."

On appeal to the circuit court, the plaintiff stipulated as follows:

"Before the action was tried in the District Court, the landlord removed the loose and flaking paint from the property to the satisfaction of an inspector for the Baltimore City Health Department, and in compliance with section 706 of the Housing Code of Baltimore City."

The sole issue contested in the circuit court, and the sole issue here, is whether § 8–211.1 is applicable.[5]

### III.

Before addressing whether § 8–211.1 applies to the facts stipulated, it would be useful to review the recent history of state legislation concerning lead paint in dwellings.

The sequence of such lead paint legislation enacted by the General Assembly begins in 1971.[6] Two laws enacted that

---

5. The defendant landlord asserts, but under the circumstances we need not decide, that the District Court properly denied relief under § 9.9. We note, however, that the conditions which constitute or, if not promptly corrected, will constitute a serious threat to the health of occupants, and thus warrant rent escrow under § 9.9, are not limited to the category of lead paint hazards that violate the City Housing Code. § 9.9(b). Nor are we obliged to express any view here as to the validity of this local legislation under Article XI-A of the Maryland Constitution. *See Parkington Apartments v. Cordish,* 296 Md. 143, 146, n. 1, 460 A.2d 52 (1983).

6. Baltimore City's concern over lead paint hazards long antedates that date. The City established one of the first municipal blood lead laboratory services in 1935. Statistics kept as far back as 1931 show 83 fatal cases of lead poisoning between 1931 and 1951. On June 29th of that year the Commissioner of Health adopted Regulation 17 which read:

year dealt with lead paint. Ch. 687 of the Acts of 1971 repealed and re-enacted § 9.9 of the Code of Public Local Laws of Baltimore City with various amendments. Among them was language allowing tenants to escrow rent based on

"the existence of paint containing lead pigment on surfaces within the dwelling, provided that the landlord has notice of the painted surfaces, and if such condition would be in violation of the Baltimore City Housing Code."

Ch. 687, § 1, § 9.9(b). The language stands unchanged in the current version of § 9.9(b).

The other enactment in 1971, Ch. 495, added the following provision to the Health Article of the Maryland Code:

"No person shall use lead-based paint on any interior surface, exterior surface to which children may be commonly exposed, or porch of any dwelling."

Language which had been in the bill which became Ch. 495 of the Acts of 1971, but was deleted in the course of passage, would have required the Secretary of Health and Mental Hygiene to promulgate guidelines for the use of lead based paint, which guidelines were to match or exceed Federal counterparts.[7] The deleted language also provided

---

"No paint shall be used for interior painting of any dwelling or dwelling unit or any part thereof unless the paint is free from any lead pigment."

See Baltimore City Health Department, *Baltimore Health News,* 113–116 (August-September, 1951) (reprinting data and regulation). This language was enacted in Ord. No. 902 (1966), Art. 13, § 706, of the Baltimore City Code. *See also* Ord. No. 1504 (1958) (requiring warning labels on lead paint cans); *Givner v. Commissioner of Health,* 207 Md. 184, 189, 113 A.2d 899 (1955) (dicta approving Regulation 17); *Kalis v. Brown,* 199 Md. 498, 500–501, 87 A.2d 163 (1952) (realty company fined for failure to remove lead paint from windowsills).

**7.** Congress addressed lead paint hazards in 1971. *See* Lead-Based Paint Poisoning Prevention Act, Pub.L. No. 91–695, 84 Stat. 2078 (1971). *See also Ashton v. Pierce,* 716 F.2d 56, 64 (D.C.Cir.1983) (holding regulations adopted pursuant to the Act inadequate with respect to "elimination of lead-based paint hazards ... including so-called tight paint."), *modified,* 723 F.2d 70 (D.C.Cir.1983); 42 U.S.C. §§ 4801–4846.

that, under the threat of a civil fine, landlords were to remove all lead based paint within four feet from the floor or ground from any interior surface of window sills, edges of doors, window sashes, porch railings and step treads, and to remove peeling or loose paint from surfaces above four feet. In addition, language stating that the section was not to apply in political subdivisions enacting comparable local legislation was deleted from the bill.

Proponents of lead paint regulation continued to seek passage of new bills. In 1973 the General Assembly repealed its 1971 prohibition against the use of lead paint, and reenacted a similar prohibition with criminal enforcement provisions. Ch. 615 of the Acts of 1973. The new version provided:

"117A.

"(A) IT IS UNLAWFUL TO USE LEAD–BASED PAINT ON ANY INTERIOR SURFACE OR ON ANY ARTICLE INTENDED FOR HOUSEHOLD USE, EX-CEPT A LEAD–BASED INDUSTRIAL PAINT AP-PLIED TO A HOUSEHOLD APPLIANCE, OR ON ANY EXTERIOR SURFACE TO WHICH CHILDREN MAY BE COMMONLY EXPOSED OR ON A PORCH OF ANY DWELLING.

"(B) ANY PERSON VIOLATING THE PROVISIONS OF THIS SECTION IS GUILTY OF A MISDEMEANOR AND, UPON CONVICTION, SHALL BE SUBJECT TO A FINE OF NOT MORE THAN $1,000 OR IMPRISON-MENT NOT EXCEEDING 30 DAYS, OR BOTH FINE AND IMPRISONMENT IN THE DISCRETION OF THE COURT. EVERY DAY A VIOLATION CONTINUES SHALL CONSTITUTE A SEPARATE OFFENSE."

A wholly new prohibition concerning the removal of lead paint, along with a civil enforcement mechanism, was added as well (later recodified as § 8–211.1):

"117B.

"(A) NOTWITHSTANDING ANY PROVISION OF LAW OR ANY AGREEMENT, WHETHER WRITTEN

OR ORAL, IF A LESSOR FAILS TO REMOVE ANY AND ALL LEAD–BASED PAINT FROM ANY INTERIOR, EXTERIOR OR OTHER SURFACE THAT IS EASILY ACCESSIBLE TO CHILDREN [[WITHIN FOUR (4) FEET OF THE FLOOR LEVEL]] OF A RESIDENTIAL PREMISE WITHIN [[FIVE]] [[THIRTY]] TWENTY DAYS AFTER NOTICE THAT LEAD–BASED PAINT IS PRESENT ON SUCH SURFACES, THE LESSEE MAY DEPOSIT HIS RENT INTO AN ESCROW ACCOUNT WITH THE CLERK OF THE DISTRICT COURT FOR THE POLITICAL SUBDIVISION IN WHICH THE PREMISES ARE LOCATED. THE RIGHT OF A LESSEE TO DEPOSIT RENT IN AN ESCROW ACCOUNT SHALL NOT PRECLUDE HIM FROM PURSUING ANY OTHER RIGHTS OR REMEDIES AVAILABLE TO HIM AT LAW OR EQUITY BUT SHALL BE IN ADDITION THERETO.

"(B) MONIES DEPOSITED IN AN ESCROW ACCOUNT SHALL BE RELEASED UNDER THE FOLLOWING TERMS AND CONDITIONS:

"(I) TO THE LESSOR UPON CERTIFICATION BY THE APPROPRIATE LOCAL HEALTH AUTHORITY THAT THE PREMISES HAVE BEEN INSPECTED AND THAT ALL LEAD–BASED PAINT VIOLATIONS HAVE BEEN CORRECTED; OR

"(II) TO THE LESSEE OR ANY OTHER PERSON WHO HAS CORRECTED THE LEAD–BASED PAINT VIOLATIONS UPON PRESENTATION OF A BILL FOR THE COSTS OF CORRECTING THE VIOLATIONS AND A CERTIFICATION BY THE APPROPRIATE LOCAL HEALTH AUTHORITY THAT THE PREMISES HAVE BEEN INSPECTED AND THAT ALL LEAD–BASED PAINT VIOLATIONS HAVE BEEN CORRECTED."

Since 1973, when this language was enacted, the General Assembly has twice repealed and reenacted the language of § 117B in the process of recodifying it in the Real Property Article as § 8–211.1. Each time the changes made have

been insubstantial. Ch. 34 of the Acts of 1977; Ch. 27 of the Acts of 1978.

In 1975 the General Assembly provided another rent escrow remedy for lead paint hazards in new legislation generally authorizing tenants to escrow rent until their landlords remedy dangerous defects. Ch. 414 of the Acts of 1975. The legislation enacted what is now § 8–211 of the Real Property Article, and, among other things, it stated:

"(E) This section provides a remedy and imposes an obligation upon landlords to repair and eliminate conditions and defects which constitute, or if not promptly corrected will constitute, a fire hazard or a serious and substantial threat to the life, health or safety of occupants, including, but not limited to:

(1) ...

(2) ...

(3) ...

(4) the existence of paint containing lead pigment on surfaces within the dwelling unit; ...."

Ch. 414 of the Acts of 1975. Subsection (o) provided:

"(o) In the event any county or Baltimore City is subject to a public local law or has enacted an ordinance or ordinances comparable in subject matter to this act, commonly referred to as a 'rent escrow law,' any such ordinance or ordinances shall supercede the provisions of this section."

Relevant portions of Section 8–211 have not been amended in any significant way since enactment. *See* Ch. 272 of the Acts of 1976; Ch. 532 of the Acts of 1977.[8]

---

8. In the 1986 session the General Assembly passed two bills which address lead paint problems. H.B. 13 establishes an Advisory Council on Lead Poisoning to study, among other things, the means of safe removal of lead paint from the interiors and exteriors of buildings and otherwise assist the State in developing statewide regulations and programs for preventing lead poisoning. S.B. 298 amends the Maryland Housing Rehabilitation Program to establish a special loan program to help finance efforts to abate lead paint hazards in resi-

## IV.

■ In the instant case, the defendant first suggests that the General Assembly intended to give a tenant the § 8–211.1 rent escrow remedy only when his or her landlord had applied lead paint. If this is so, then no remedy under § 8–211.1 exists here, because the parties stipulated that the defendant did not paint the premises with lead based paint.

The defendant discerns the intent to restrict the rent escrow remedy to situations where the landlord had applied lead paint from the wording of Ch. 615 of the Acts of 1973, which contained what is now § 8–211.1, and from title of the chapter. The defendant's argument is as follows. Chapter 615 enacted two new sections in the "Nuisances" subtitle of the Code. The first, § 117A, makes it "unlawful to use" lead based paint on various household surfaces, provides a penalty for "any person violating the provisions of this section," and states that "[e]very day a violation continues shall constitute a separate offense." Ch. 615, § 117A(A) and (B). The second section, § 117B, creates a rent escrow remedy "if a lessor fails to remove any and all lead-based paint ... that is easily accessible to children...." Ch. 615, § 117B(A). That remedy ceases to exist "... upon certification by the appropriate local health authority that the premises have been inspected and that all lead based paint violations have been corrected...." Ch. 615, § 117B(B). According to the defendant, throughout

---

dential buildings in compliance with Department of Health and Mental Hygiene requirements and procedures.

We also note that, pursuant to Code (1957, 1985 Repl.Vol.), Art. 89, § 30(f)(3), the Commissioner of Labor and Industry in the Department of Licensing and Regulation has promulgated a "Safety and Health Standard for Occupational Exposure to Lead in Construction Work." COMAR 09.12.32C, effective January 16, 1984. The regulations apply to construction work, which is defined to include, among other things, alteration, repair, renovation, demolition, reconstruction, refurbishing, restoration, painting and decorating. COMAR 09.-12.32C.02C.

Ch. 615 the term "violation" means one thing: the unlawful use of lead based paint proscribed by § 117A(A) of Ch. 615.

The relevant portion of the title of Ch. 615 reads as follows:

"AN ACT ... to prohibit the use of lead-based paint on certain surfaces; to provide a penalty for the violation thereof, to provide a procedure for the removal of lead-based paint on certain surfaces under specified conditions and generally relating to the use of lead-based paints."

The defendant relies upon the requirement that a law shall embrace one subject, which is described in its title,[9] and then assumes that the subject of Ch. 615 is "the prospective prohibition of the use or application of lead-based paint." (Defendant's reply brief, p. 4). Thus the defendant reads the clause "to provide a procedure for the removal of lead based paint from certain surfaces under specified conditions" as dealing solely with the removal of paint which the current landlord applied in violation of the statute.

In our view, the wording and title of Ch. 615 do not warrant such a narrow reading. Ch. 615 contains two separate sections, one making the application of lead based paint a criminal offense, § 117A, and one providing a civil remedy for a tenant seeking the removal of lead paint easily accessible to children, § 117B. The two sections may reasonably be read independently of each other. This reading is confirmed by the words at the beginning of § 117B, "[n]otwithstanding any provision of law." It is further confirmed by the General Assembly's subsequent decision to codify the sections in entirely different articles of the Code.

The violations referred to in § 117B(B) consist of failings by the lessor "to remove any and all lead-based paint from any interior, exterior or other surface that is easily accessible to children of a residential premise." Nowhere does the

---

9. The Maryland Constitution, Art. III, § 29, states in part that "... every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title."

statute provide that "lead based paint violations" refer solely to the criminal violations created by § 117A.

Moreover, we note that the General Assembly worded the rent escrow remedy to insure that landlords receive notice of the presence of lead based paint and have twenty days to remove it. These features of the remedy are apparently intended to protect landlords who are ignorant of existing lead paint hazards in their premises. Yet if we accept the defendant's reading of the statute, then we must assume that these features were intended only to protect landlords who deliberately create new lead paint hazards in violation of the criminal law. The defendant's construction of Ch. 615 makes the notice provision of the escrow remedy largely superfluous and nugatory, and we strive to avoid such results when construing statutes. *Hurst v. V. & M. of Virginia,* 293 Md. 575, 578, 446 A.2d 55 (1982).

We also reject the defendant's assumption about the narrow meaning of the title of Ch. 615. The single subject embraced by Ch. 615, and described in its title, is the abatement of lead paint hazards created both by the application of lead paint and by the failure to remove lead paint that is easily accessible to children. In *City of Baltimore v. State,* 281 Md. 217, 225–226, 378 A.2d 1326 (1977), we said:

> "The purpose of the title requirement is to inform 'the members of the legislature and the public of the nature of the proposed legislation.' *City of Bowie v. County Commissioners,* 258 Md. 454, 467, 267 A.2d 172 (1970). However, this Court has repeatedly stated that the title of an act need not give an abstract of its contents. *Madison National Bank v. Newrath,* 261 Md. 321, 275 A.2d 495 (1971); *Clinton Volunteer Fire Dept. v. Board of County Commissioners,* 259 Md. 456, 270 A.2d 778 (1970); *Leonardo v. Board of County Commissioners,* 214 Md. 287, 134 A.2d 284, *cert. denied,* 355 U.S. 906, 78 S.Ct. 332, 2 L.Ed.2d 260 (1957); *Pressman v. State Tax Commission,* 204 Md. 78, 102 A.2d 821 (1954); *Neuenschwander v. Washington Suburban Sanitary Commission,* 187

Md. 67, 48 A.2d 593 (1946). Thus, the mere fact that a title goes on to mention many specific projects does not mean that it must therefore list all such projects, as long as the title of the act fairly informs the reader of its nature."

Accordingly we reject the argument that § 8–211.1 offers a remedy only to tenants whose landlords have criminally applied lead paint.

■ We turn now to the second interpretation of § 8–211.1 offered by the defendant, which is that § 8–211.1 applies in the circumstances here but that its undefined terms were intended to incorporate the standards for lead paint "violations" and their abatement promulgated by the "local health authority." It was stipulated in this case that the appropriate local health authority had inspected the premises and had certified that violations of *its* regulations concerning lead based paint had been corrected. The defendant asserts that this is all that § 8–211.1(c)(i) (Ch. 615, § 117B(B)(1) ) requires for release of any rent in escrow to the landlord.

We are not persuaded, however, that the terms "easily accessible to children," "lead-based paint violations" and "local health authority" in § 8–211.1 only gain meaning from the regulations promulgated by the Baltimore City Health Department under § 9.9. Generally when .this Court construes a statute, it gives weight to settled administrative practice *under that statute* as long as the administrative practice is not inconsistent with the plain statutory language. *See, e.g., Macke Co. v. Comptroller,* 302 Md. 18, 22–23, 485 A.2d 254 (1984); *Comm'n On Human Rel. v. Mass Transit,* 294 Md. 225, 233, 449 A.2d 385 (1982); *Comptroller v. John C. Louis Co.,* 285 Md. 527, 543–545, 404 A.2d 1045 (1979); *Holy Cross Hosp. v. Health Services,* 283 Md. 677, 685, 393 A.2d 181 (1978). But we are not aware of any authority to support the different proposition that courts interpreting a statewide public general law should give weight to a local administrative practice under a

different statute, applicable in only one jurisdiction, and enacted at a different time.

Regulations 5 and 6 of the Baltimore City Health Department (*supra* n. 2), dealing with lead paint removal, were adopted to enforce §§ 702 and 707 of the Baltimore City Housing Code, both of which set forth general requirements relating to safety and sanitary maintenance. Nothing suggests that these regulations were adopted to implement § 8–211.1, or that they define its terms. Indeed, the parties concede that § 8–211.1 has not been enforced by the local health department in Baltimore City. There are no administrative agency regulations promulgated under § 8–211.1 to define the terms used in the statute. No settled administrative practice under or construction of § 8–211.1 exists. The absence of administrative practice under or construction of § 8–211.1 furnishes no basis for filling the void with Baltimore City's administrative practice under a different law, § 9.9.

Finally, the wording of § 8–211.1(a) and (b) suggests that the General Assembly intended the rent escrow remedy to be supplemental and additional to any other remedy available to a tenant. Subsection (a) begins with the phrase "notwithstanding any provision of law." Subsection (b) states: "The right of a lessee to deposit rent in an escrow account does not preclude him from pursuing any other right or remedy available to him at law or equity and is in addition to them." These phrases indicate that the General Assembly intended § 8–211.1 to supplement and coexist with Baltimore City's local law, not that § 8–211.1 is a nullity in Baltimore City.

Because we view the two laws as distinct, there is no factual basis for asserting that the conditions for release of rent in escrow under § 8–211.1(c)(i) were met. Section 8–211.1(c)(i) provides for release upon "certification by the appropriate local health authority that the premises have been inspected and that all lead-based paint violations have been corrected." The parties stipulated that a Baltimore

City Health Department inspector found the premises to be in compliance with Section 706 of the Housing Code, which, among other things, prohibits loose or peeling paint. From the stipulated facts it is not clear whether the inspector concerned himself solely with loose or flaking paint, or in addition, with intact paint on potential biting surfaces in violation of Regulation 6.[10] In any event, nothing in the record suggests that the inspector found the premises to be free of all lead paint easily accessible to children, as required by § 8–211.1.

■ The last alternate construction of the statutes proffered by the defendant is that both laws apply in the circumstances here but that § 9.9, a public local law, conflicts with § 8–211.1, a public general law, and in such cases of conflict the public local law should prevail.

This Court has consistently held that repeal by implication is disfavored, and we attempt to reconcile different statutes if reasonably possible. *Prince George's Co. v. McBride*, 263 Md. 235, 242–243, 282 A.2d 486 (1971); *Anne Arundel County v. Board*, 248 Md. 512, 523, 237 A.2d 426 (1968). We have held that "a conflict exists only when a local law prohibits something permitted by the legislature, or permits something prohibited by the legislature." *Annapolis v. Annap. Waterfront Co.*, 284 Md. 383, 391, 396 A.2d 1080 (1979), citing *Murray v. Director of Planning*, 217 Md. 381, 389, 143 A.2d 85 (1958).

Here the General Assembly has prohibited the use of lead based paint on various household surfaces, and has permitted tenants to pay rent into escrow when their landlords fail to remove "any and all lead-based paint" from surfaces "easily accessible to children." The local law, and the regulations implementing it, prohibit the use of paint containing lead pigment "for interior painting of any dwelling unit...." (Housing Code § 706) and permit tenants to pay rent into escrow when there exists a "serious threat to the

---

10. *See* n. 2, *supra.*

life, health or safety of occupants ... including, *but not limited to,* ... the existence of paint containing lead pigment on surfaces within the dwelling ... [in] violation of the Baltimore City Housing Code." § 9.9(b), emphasis supplied.

The prohibitions concerning the use of lead paint are essentially the same. Nothing permitted by the public general law is prohibited by the local law. The language of the local law expressly avoids limiting the class of conditions which constitute a serious threat to the health or safety of occupants, and thus nothing in the local law prohibits a tenant from asserting that a lead paint hazard, which is not a violation of the City Housing Code, nevertheless seriously threatens the health of the occupants and warrants rent escrow. Nor does the local law permit anything prohibited by the general law. We conclude that the two statutes do not conflict.

Consequently, the circuit court correctly held that § 8–211.1 may be invoked by the tenant in the circumstances stipulated here.

JUDGMENT AFFIRMED.

PETITIONER TO PAY COSTS.